GREENSBURG WATER COMPANY *v.* LEWIS ET AL.

[No. 23,788. Filed July 7, 1920.]

1. APPEAL.—*Final Judgment.*— *"Finds."*— *Construction.*—Where, after sustaining a demurrer to the complaint and noting the plaintiff's exception and election to stand on the ruling, an order-book entry was made that the court "finds for the defendant, that the plaintiff take nothing and that the defendant recover * * * costs," was sufficient as a final judgment, though the word "finds" was used instead of the usual word "orders" or "adjudges." p. 442.

2. PUBLIC SERVICE COMMISSION.—*Orders.*—*Application for Rehearing.*—*Necessity Before Resort to Courts.*—*Statute.*—*Construction.* —Section 79 of the Public Service Commission Act, §10052a *et seq.* Burns 1914, Acts 1913 p. 167, construed in connection with §§76, 78, fixes the time for bringing an action in the courts

by a party aggrieved by a final order of the commission at sixty days, beginning with the date of the entry, except where a final order has been set aside by the commission on rehearing, in which case the time is fixed at thirty days after the final order on rehearing; and the act does not require the filing and disposal of a motion for rehearing as a condition precedent to such right of resort to the courts, as was required under §6 of the Railroad Commission Act, as amended, Acts 1913 p. 820, §5536 Burns 1914. pp. 442, 445.

3. PUBLIC SERVICE COMMISSION.—*Void Order.—Right of Resort to Courts.—Time.—Cases Distinguished.*—The rule that a party aggrieved by an order of the Public Service Commission should exhaust the remedies provided for on motion for rehearing and modification, etc., before resorting to the courts for relief, applied by the Supreme Court in certain cases in which the orders were not invalid or unreasonable as a whole, has no application to a case in which the order is wholly void because the statute upon which it is based conflicts with provisions of the state and federal Constitutions relative to the impairment of contractual obligations. (*Chicago, etc., R. Co.* v. *Railroad Commission,* 175 Ind. 402; *Southern, etc., R. Co.* v. *Railroad Commission,* 172 Ind. 113; *Vandalia, etc., R. Co.* v. *Railroad Commission,* 182 Ind. 382; *Northern, etc., Cable Co.* v. *Peoples, etc., Tel. Co.,* 187 Ind. 486, distinguished.) p. 445.

4. CONSTITUTIONAL LAW.—*Franchises.—Municipality as Agent of State.*—Where a city possessed delegated power to contract with a utility company as to rates, a franchise granted by it and accepted by the company constituted a contract binding on the state and the company, since the municipality under the circumstances was the agent of the state. p. 452.

5. FRANCHISES.—*Modification or Abrogation.—Mutual Consent.*—Neither the state nor a public utility company has power to modify or abrogate a franchise contract existing between them, though such contract may be abrogated in its entirety by mutual agreement of the parties. p. 452.

6. CONSTITUTIONAL LAW.—*Franchises.—Impairment of Obligations.*—Where a water company, pursuant to §§101, 102 of the Public Service Commission Act, surrendered its franchise and accepted an indeterminate permit, under which it was permitted to collect increased rates, a new contract was thereby created between the state and the company; and the amendment to such statute, passed after the new contract was executed (Acts 1919 p. 709), which attempts to re-establish some of the provisions of the original franchise as to free service, etc., to

municipalities, constitutes an impairment of contractual obligations, and is therefore void.    p. 453.

From Decatur Circuit Court; *John W. Craig,* Judge.

Action by the Greensburg ·Water Company against Ernest I. Lewis and others, constituting the Public Service Commission. From a judgment for the defendant, the plaintiff appeals. *Reversed.*

*George W. Bruce,* for appellant.

*Ele Stansbury,* Attorney-General, *E. M. White* and *Frank Hamilton,* for appellees.

LAIRY, J.—This action was brought by appellant in the Decatur Circuit Court under the provisions of §78 of an act concerning public utilities, creating the Public Service Commission, abolishing the Railroad Commission of Indiana, and conferring the powers of the Railroad Commission on the Public Service Commission, approved March 4, 1913. Acts 1913 p. 167, §10052a *et seq.* Burns 1914. The relief which appellant sought to obtain was a judgment setting aside an order of the Public Service Commission of Indiana entered on April 23, 1920, on the ground that such order of the commission was unlawful, in that it was made without authority of law and was violative of the constitutional rights of appellant.

Appellees addressed a demurrer to the complaint on the ground that the court was without jurisdiction, and on the further ground that the complaint did not state facts sufficient to constitute a cause of action. The trial court sustained appellees' demurrer to the complaint. After showing the ruling of the court on the demurrer, the exception of appellant, and its election to abide by the ruling on demurrer, the order-

book entry proceeds as follows: ''And now the court finds for the defendant, that the plaintiff take nothing in this action and that the defendant recover of and from the plaintiff the costs of this action, taxed at —— dollars and —— cents.''

Appellees assert that the entry does not show a final judgment from which an appeal lies, and ask that the appeal be dismissed on that ground.

1. It is apparent that the court, by the order quoted, intended to make a final disposition of the case as to all of the parties thereto. The language of the order-book entry is not as apt and accurate as might have been employed to express the purpose and meaning intended, but, nevertheless, the purpose is clear. The word ''finds,'' as denoting the action of the court, is used instead of ''orders'' or ''adjudges,'' as usually employed in the rendition of judgments; but, this is clearly the inadvertent use of a word. There were no facts to be found upon which a judgment could be based, and it is therefore clear that the court was not intending to make a finding to be followed by a judgment. The entry is sufficient to show a final disposition of the case in favor of appellees and a judgment for costs against appellant. *State, ex rel.* v. *Lung* (1907), 168 Ind. 553, 80 N. E. 541; *Matter* v. *Campbell, Treas.* (1880), 71 Ind. 512; *Kern* v. *Saul* (1895), 14 Ind. App. 72, 42 N. E. 496.

In support of the court's ruling on the first ground of demurrer, appellee asserts that the complaint is insufficient to invoke the jurisdiction of the

2. court for the reason that it does not show that appellant had exhausted the remedies available before the commission before resorting to the court for relief. Appellee takes the position that proper

practice under the act cited required appellant, after the order was made, to file a motion for a rehearing or a motion to modify the order; and, in case such relief was denied by the commission, he might then resort to the courts for relief, but not before taking the steps indicated. In support of their position appellees cited the following cases from this court: *Chicago, etc., R. Co.* v. *Railroad Comm. etc.* (1911), 175 Ind. 402, 95 N. E. 364; *Vandalia, etc., R. Co.* v. *Railroad Comm., etc.* (1914), 182 Ind. 382, 101 N. E. 85; *Northern, etc., Cable Co.* v. *People's, etc., Tel. Co.* (1918), 187 Ind. 486, 119 N. E. 212; *Southern Ind. R. Co.* v. *Railroad Comm., etc.* (1909), 172 Ind. 113, 87 N. E. 966.

All of the cases cited except one involve questions relating to appeals under the provisions of the Railroad Commission Act. The section of the Railroad Commission Act relating to appeals, as amended in 1913, provides that any party who is dissatisfied with any final order of the commission may, within twenty days after the entry thereof, file a petition for rehearing specifically stating therein the grounds or reasons for such rehearing, and that, within twenty days after the ruling on such petition for rehearing such party may begin an action against the commission in any court of competent jurisdiction in any county into, or through which, such carrier operates, to suspend or set aside such order. §5536 Burns 1914, Acts 1913 p. 820.

The Public Utilities Commission Act, *supra,* does not contain this provision or any provision similar in meaning or effect. There is no provision which expressly grants to a party aggrieved by a final order of the commission the right to file a motion for a re-

hearing, or that expressly confers on the commission any power to grant rehearings on motion of a party aggrieved by a final order.

The attention of the court is called to §76 of the act, which is §10052x2 Burns 1914. This section provides that the commission may at any time, upon notice to the public utility and after opportunity to be heard as provided in §§57 and 71, rescind, alter or amend any order fixing any rate or rates, tolls, charges or schedules, or any other order made by the commission, and certified copies of the same shall be served and take effect as herein provided for original orders. This section cannot be fairly construed as conferring on a party aggrieved by a final order the right to file a petition for a rehearing as preliminary to an action in court to rescind or set aside a final order of the commission. It will be observed that there is nothing in the section to indicate that such action of the board may be invoked by motion or petition of either party, and that no time is fixed within which a motion or petition may be filed, if it be assumed that such action may be so invoked. The board is free to take action, as contemplated by this section, at any time after a final order is entered.

Section 78 of the act provides in substance that any public utility and any person or corporation in interest, who may be dissatisfied with any order of the commission designated in the section, may commence an action in the circuit or superior court of any county in which such order is operative against the commission as defendant, to set aside such order or to enjoin the enforcement thereof on certain grounds stated in the section.

Section 79 limits the time within which such an

action may be brought to sixty days after the entry or rendition of such order or determination, and expressly provides that the right to commence any such action, proceeding, or suit, or to exercise any right of recourse to the courts shall terminate absolutely at the end of such sixty days. §10052a3 Burns 1914. It thus appears that the right to bring an action by the party thinking himself aggrieved by an order of the board accrues on the rendition of such order and terminates absolutely sixty days thereafter. The proviso to this section applies to cases where a final order made by the commission has been set aside by the commission in granting a petition for a rehearing, and another order entered after such rehearing. The proviso limits the right of recourse to the courts under such circumstances to thirty days after the final determination by the commission after such rehearing.

Construing these sections of the statute together, it is apparent that the time for beginning an action in the courts by the party aggrieved by a final

2. order of the commission begins to run from the date of the entry of the order, and that it expires in sixty days thereafter, except as otherwise limited by the proviso to §79. The act under consideration does not require that a motion for a rehearing should be filed and passed on by the commission as a condition precedent to the right of the aggrieved party to resort to the courts for relief.

Appellees call the attention of the court to the fact that the cases cited in support of their contention arose under the Railroad Commission Act prior

3. to the amendment of that act in 1913, and that the specific provisions with reference to filing a motion for a new trial as a prerequisite to a resort

to the courts contained in the section of that act here-tofore quoted were not embodied in the act at the time those cases arose. It is asserted that prior to the amendment of 1913, the provisions of the Railroad Commission Act, with reference to the right of an aggrieved party to resort to the courts for relief, were very similar to the provisions on the same subject as found in the act here under consideration; and that, for the reason stated, those decisions should be given weight in deciding the question here involved. Without attempting to differentiate the provisions of the act under consideration from those of the Railroad Commission Act as it existed prior to the amendment of 1913, it may be said that the decisions of the court rendered under that act, on which appellees rely, do not sustain the proposition for which they contend in this case. None of the cases cited expressly decide that an action could not be brought under the provisions of the act to set aside an order of the commission until after a motion for a rehearing had been filed and passed on by the board; and none of the cases cited can be construed as holding that there was a want of jurisdiction in the trial court or in this court on appeal.

A study of those cases will disclose that the orders which were attacked were not invalid or unreasonable as a whole; but that such orders, in part at least, were the results of a valid and reasonable exercise of the powers vested in the commission. The effect of the decisions is to hold that an order of the commission which is in part valid and reasonable will not be set aside as a whole by the courts because it contains some provision which is invalid or unreasonable, where the party aggrieved

had taken no steps before the commission to have the objectionable features of the order modified or rescinded before resorting to the courts. The principle involved in the cases cited is the same as that invoked by this court in a line of cases which hold that, where a trial court, by judgment not otherwise vitiated by error, grants or withholds relief to which a party is entitled, the party injured must seek a modification of the judgment by a proper motion in the trial court in order to present the question on appeal. *Wood* v. *State, ex rel.* (1892), 130 Ind. 364, 30 N. E. 309; *Jarrell* v. *Brubaker* (1898), 150 Ind. 260, 49 N. E. 1050; *New York, etc., R. Co.* v. *Hamlet Hay Co.* (1898), 149 Ind. 344, 47 N. E. 1060, 49 N. E. 269; *Millikan* v. *McAlpin* (1914), 181 Ind. 482, 104 N. E. 855.

The principle involved in the decision of such cases can have no application to the instant case, for the reason that the complaint in this case proceeds on the theory that the entire order entered by the court was void on the ground that the statute on which it is based is invalid as being in conflict with provisions of the state and federal Constitutions.

The remaining question to be determined is the sufficiency of the complaint to withstand the attack made by the demurrer on the ground that it does not state facts sufficient to constitute a cause of action.

The complaint shows that appellant is a corporation organized under the laws of this state with its home office in the city of Greensburg, Indiana. It appears that for more than ten years prior to the filing of the complaint appellant had been engaged in furnishing water to the city of Greensburg and the inhabitants thereof through a system of pipes and conduits for public and private use and for the protection of prop-

erty from fire.   From December 22, 1902, until June 30, 1917, as alleged, appellant conducted its business and operations under the terms of a franchise contract granted by the city of Greensburg and accepted by appellant; and, on the date last mentioned, it surrendered its franchise contract to the State of Indiana under and pursuant to the provisions of §§101 and 102 of the act first cited in this opinion, and since that date it has operated under the indeterminate permit received by operation of law in lieu of the franchise contract so surrendered, which indeterminate permit was in force and unrevoked at the time of the commencement of this action.

It is further alleged that the commission after a hearing on a petition filed by appellant made and promulgated an order to be effective November 1, 1918, by which it fixed and established a schedule of rates, tolls and charges for the various services required of appellant in furnishing water to the city of Greenburg and its inhabitants.   The order so made provided for an annual rental of $55 for each fire hydrant, and $25 for each public drinking fountain, and further ordered that all free service to consumers should be discontinued.   By the terms of the surrendered franchise contract, appellant was permitted to collect and receive an annual rental of $33 for each fire hydrant and was required to furnish drinking water in a limited amount free of charge for all public schools, churches, public buildings used extensively for city purposes, the public library and certain public drinking fountains.

By an act approved March 14, 1919, the general assembly of the state amended an act approved March 9, 1915, which amended §112 of the act first cited in

this opinion. The last amendment inserted a new provision into this section. The part of such new provision which is material to this controversy is as follows: "And it shall be the duty of any utility operating under any franchise, stipulating for free service or service at special rates to a municipality, or any institution or agency of such municipality, to furnish such free service or service at special rates *and it shall be the duty of any utility which has surrendered a franchise stipulating for such free service or service at special rates and received in lieu thereof an indeterminate permit under the provisions of this act, to furnish such free service or service at special rates until such time as the franchise would have expired had it not been surrendered."* Acts 1919 p. 709.

The complaint alleges that on July 8, 1919, the city of Greensburg petitioned the Public Service Commission of Indiana for an order requiring appellant to furnish water service to said city, the public schools, and public drinking fountains at the rate of charges specified in the franchise of date December 22, 1902, for the duration of said franchise as provided by the act of the legislature of Indiana approved March 14, 1919; and that such proceedings were had on such petition as resulted in a final order issued and promulgated by the commission, which order is as follows:

"It is therefore ordered by the public service commission of Indiana, that the Greensburgh Water Company shall continue to furnish water to the city of Greensburgh at the rates specified in the franchise granted to the Greensburgh Water Company by the city of Greensburgh on

December 22, 1902, and shall continue to furnish the city of Greensburgh all the free service required to be furnished by such franchise until December 22, 1927, the date when such franchise would have expired had it not been surrendered for an indeterminate permit.

"And it is further ordered, that the Greensburgh Water Company shall file a supplement to its schedules of rates and charges cancelling all rates now in effect for water furnished to the city of Greensburgh which are in conflict with rates provided in such franchise or provide a rate for service required by such franchise to be furnished free, and substituting therefor such rates as, are provided in such franchise."

Johnson, McCardle, Haynes, concurring·

VanAuken, dissenting."

Appellant alleges in substance that the italicized portion of the act quoted on which such order is based is void, for the reason that its enforcement would violate Art. 1, §10, of the Constitution of the United States and also Art. 1, §24, of the Constitution of the State of Indiana. It is alleged that its enforcement would impair the obligations of contract entered into between appellant and the State of Indiana at the time the appellant surrendered its franchise to the state in lieu of an indeterminate permit which it received at the time by operation of law. It is alleged in substance that, by the terms of this contract, appellant released to the state all rights and privileges by it acquired under the franchise agreement with the city of Greensburg and agreed to operate under the indeterminate permit received by operation of law;

that it further agreed that the city of Greensburg should have the right to purchase its property at a value and under terms and conditions to be fixed by the Public Service Commission as provided by §§100, 101, and 102 of the Public Service Commission Act, *supra;* that it further agreed to waive the right to have the question of the necessity for the purchase of its property by the city tried and determined by a jury, which right it had under the provisions of §104 of said act; and that, in consideration of the foregoing agreements made, and the obligations thereby assumed by appellant, the state released and relieved appellant of all the obligations and duties imposed on it under and by virtue of the terms and conditions of the franchise agreement under which it had previously operated.

The complaint further alleges: ''Plaintiff further says that the contract heretofore stated was entered into on the part of the state, by and through its public service commission, which body had full authority to act on behalf of the state under the provisions of an act of the legislature generally known as the Public Service Commission Act. The plaintiff entered into the contract under authority granted by its board of directors and in conformity with the provisions of such act of the legislature.''

It has been necessary to set out quite fully material facts alleged in the complaint in order to disclose the precise question presented for decision. It is apparent from the face of the order made by the commission that it was not acting in pursuance of the provisions of the act giving power to fix just and reasonable rates for service after notice and hearing, but that the order was made in the exercise of a sup-

posed power conferred on the board by the italicized portion of the statute heretofore quoted. If that portion of the act is clearly violative of the constitutional provisions pointed out by appellant, the order must be set aside; otherwise it must be upheld.

Assuming that the city of Greensburg, at the time the franchise was granted, possessed the delegated power to contract with the water company as to rates of service, then it must follow that the franchise granted by the city and accepted by the company constituted a contract binding on both parties as to all its terms and provisions.

In making the contract under such circumstances the city acted as an agency of the state under delegated authority, and the terms of such contract became binding on the state as well as on appellant. Neither the water company nor the state would have power to modify said contract or to abrogate it in whole or in part without the consent of the other contracting party; but the contracting parties—the state on one side and the water company on the other—might, by contract, each release the other from the obligations of the contract and thus abrogate it in its entirety as to both parties. *Central Union Tel. Co.* v. *Indianapolis Tel. Co.* (1920), *ante* 210, 126 N. E. 628, and cases there cited. The act by which such a rescission or abrogation is accomplished involves all the essential elements of a contract. The parties to be affected must have legal capacity to contract; there must be a meeting and agreement of the minds as to the terms; and there must be a consideration. Bishop, Contracts (2d ed.) §§812, 813. It has been held that the relinquishment by both parties of their respective rights under the contract is a sufficient consideration

to support an agreement by each party to absolve the other from all obligations imposed by the contract; or, as more frequently stated, the mutual release from the obligations of the old contract is an adequate consideration for the rescission. *Kelly* v. *Bliss* (1882) 54 Wis. 187, 11 N. W. 488; *Flegal* v. *Hoover* (1893), 156 Pa. St. 276, 27 Atl. 162; *Sargent* v. *Robertson* (1897), 17 Ind. App. 411, 46 N. E. 925. The unmaking of a contract is within the power which made it. Its unmaking is accomplished by the same means by which it was made, and when accomplished it is equally effectual. All parties are fully and finally released from the obligations of the abrogated contract, and neither party can restore it in whole or in part without the consent of the other.

By §§101 and 102 of the act first cited, the State of Indiana made a proposal to the public utilities of the state operating under franchise contracts then existing. By the sections cited the state proposed that any such utility might surrender its franchise contract to the state and be released from the obligations thereby imposed on certain terms and conditions specifically stated in the act. The proposal was open to all such utilities of the state and might be accepted by any in the manner and within the time prescribed in §101, *supra*. In 1915, §101 of the act was so amended as to extend the time within which such proposal might be accepted until July 1, 1917. On June 30, 1917, appellant accepted the proposal of the state by surrendering its franchise in accordance with the provisions of the act. By this acceptance the minds of the parties met and agreed on the terms of the proposal embodied in the act and a contract was thereby concluded between the state and appellant

whereby all the terms, conditions and provisions of the existing franchise agreement were abrogated and rescinded. The state was a party to the franchise agreement which the city of Greensburg made with the appellant, acting for the state under delegated authority. Later the state, acting directly through its legislature in making the proposal and through its Public Service Commission, on which it had conferred express authority in the premises, entered into a contract with appellant by the terms of which such franchise agreement was abrogated and rescinded *in toto* as to both parties. " 'The extinguishment of the obligatory features of the old franchise as to one side by necessary inference operated to extinguish such features as to the other.' " *Calumet Service Co.* v. *Chilton* (1912), 148 Wis. 334, 356, 135 N. W. 131, 140.

By the italicized part of the act quoted, *supra,* the state attempted to violate the obligations of a contract made with appellant, by the force of which the franchise contract had been abrogated in all its terms as to both parties. The act attempts to revivify and re-establish some of the terms of the abrogated contract which were burdensome on appellant, and to enforce such terms against appellant without its consent. That part of the act, if enforced, would clearly impair the obligations of contracts, and, for the reasons stated, it must be held to be void as in conflict with the sections of the Constitution heretofore cited.

The judgment of the trial court is reversed, with instructions to overrule the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.

Myers, C. J., not participating.