CHICAGO, LAKE SHORE AND SOUTH BEND RAILWAY
COMPANY *v.* GUILFOYLE.

[No. 24,420. Filed June 1, 1926.]

1. STREET RAILROADS.—*Rights under indeterminate permit.*—A
street railroad that surrendered its franchise for an indeter-
minate permit under the acts of 1921 (Acts 1921 p. 197,
§12774 Burns 1926) thereby terminated all its contract rights
with the city excepting the right to operate its railroad over
certain prescribed routes within the city and to maintain its
tracks, poles, wires, etc., in and upon such routes. p. 16.

2. CONTRACTS.—A contract that has ceased to bind one of the
parties thereto no longer binds the other. p. 16.

3. STREET RAILROADS.—*Street railroad not bound by its franchise
contract in favor of the city or state after acquiring indeter-
minate permit.*—As the surrender of its franchise by a street
railroad for an indeterminate permit under §12774 Burns 1926
(Acts 1921 p. 197) terminates all its rights under the fran-
chise, the franchise contract is no longer binding on the utility
in favor of the city or state in which it operates. p. 16.

4. STREET RAILROADS.—*Duties of a street railroad that has sur-
rendered its franchise and accepted an indeterminate permit.*—
The Public Service Commission Act (Acts 1913 p. 167, §12672
*et seq.* Burns 1926) requires a street railroad that has sur-
rendered its franchise and accepted an indeterminate permit
under §12774 Burns 1926, Acts 1921 p. 197, to continue ren-
dering adequate service in the performance of all duties
imposed by the statute under which it was incorporated and
by its articles of incorporation. p. 17.

5. STREET RAILROADS.—*Transportation of freight over tracks of
street-car line in freight cars does not constitute an additional
servitude.*—The fact that freight transported over an inter-
urban street-car line is destined for delivery on a street over
which street cars are operated and, with the consent of the
municipal authorities, is transported in freight cars operated
on the tracks of the interurban street railroad, does not con-
stitute an additional servitude on the ground occupied by the
street. p. 18.

6. INJUNCTION.—*Owners of property abutting on street cannot
enjoin interurban railroad company from operating freight
cars over such street.*—Owners of property abutting on a street
occupied by an interurban railroad track cannot enjoin the
railroad company from operating freight cars on such track
where the company has surrendered its charter and accepted
an indeterminate permit under §12774 Burns 1926, although
its franchise prohibited the operation of such cars, where it

is not claimed that such cars were operated in a careless, improper or unlawful manner, and such property owners sustained no damage peculiar to themselves.   p. 18.

7.   ACTION.—Numerous persons separately owning residences on a street occupied by an interurban railroad line cannot join in an action to recover damages to their several properties by the operation of freight cars over such tracks.   p. 19.

From Elkhart Superior Court; *William B. Hile,* Judge.

Suit for injunction by Davis L. Guilfoyle and others against the Chicago, Lake Shore and South Bend Railway Company. From a judgment for plaintiffs, the defendant appeals. *Reversed.*

*Worth W. Pepple, Harry R. Wair, Arthur L. Gilliom, Ira Church* and *Willard Chester,* for appellant.

*Eli F. Seebirt* and *Daniel D. Schurtz,* for appellees.

EWBANK, J.—The appellees, seventy-one in number, were the plaintiffs below, and brought this action to obtain an injunction forbidding the defendant company (appellant) to operate freight cars and trains of freight cars, or to haul freight upon and along its interurban railroad tracks in LaSalle avenue, in the city of South Bend. A complaint in two paragraphs and a supplemental complaint having been filed, the defendant filed a demurrer to each paragraph as modified by the facts stated in the supplemental complaint, which demurrer was overruled. An answer of general denial was then filed, after which the cause was tried by the court and, upon proper request, a special finding of the facts was made, on which the court stated five conclusions of law. These conclusions were to the effect that the defendant company has no right to haul freight on its railroad in LaSalle avenue except in its baggage and express cars, that it has no right to operate thereon more than two baggage or express cars in any one train, or to operate any freight cars thereon except to haul neces-

sary materials for use in the repair of its tracks and the operation of its railroad, and that plaintiffs are entitled to a permanent injunction forbidding defendant to do any of the things mentioned which the court decided it had no right to do. Judgment was rendered perpetually enjoining defendant from hauling or carrying freight on its railroad on LaSalle avenue in said city of South Bend, excepting parcel express, baggage and small merchandise carried in baggage or express cars, and excepting materials for repairing and maintaining its tracks and operating its railroad, and perpetually enjoining it from operating freight cars and freight trains thereon. Error is assigned upon each conclusion of law, and upon overruling the demurrer to the complaint. The special finding recites in the main the facts alleged in the complaint and supplemental complaint to the following effect:

That each of the plaintiffs, severally, is the owner of a lot with a dwelling house thereon, all of which lots abut on that part of LaSalle avenue that is used exclusively for residence purposes: that said residence portion of the avenue extends eastward from where LaPorte avenue crosses LaSalle avenue 3,500 feet to Michigan avenue, and is traversed by defendant's interurban railroad tracks lengthwise along the center of the street; that east of said residence district is a square on LaSalle avenue devoted to business purposes, in which defendant has a passenger depot, and near that depot, is the eastern end of defendant's railroad, where cars are turned on a "Y"; that defendant is lawfully organized as an interurban railway company and that it entered upon the streets of South Bend and constructed its railroad thereon under a franchise contract with the city by which it was authorized to build and operate its track from the city limits on the west to and along Birdsell street; thence to where LaPorte

avenue intersects and crosses LaSalle avenue; thence east along LaSalle avenue to the eastern terminus of the railroad; which franchise granted defendant the right to construct, repair and maintain its railroad therein, but stipulated that the freight depot should not be east of Birdsell street, and that, "said company shall not haul any freight on * * * LaSalle avenue except such as is contained in baggage and express cars * * * and shall not operate any freight train or freight cars on any street or avenue in the city of South Bend or any part thereof that lies east of Birdsell street," and that, "The baggage cars and express cars herein mentioned shall be used exclusively for parcel express and baggage and small merchandise, and shall not at any time exceed two cars in number in any one train, while operating or running east of said LaPorte avenue, and shall not be unloaded except at the company's baggage room"; that these provisions of the franchise contract, as duly executed by the defendant company and the city, were ratified in general terms by ordinances duly passed, and continued in full force until five months after this action was commenced, when defendant, on May 22, 1922, "surrendered its franchise from the city of South Bend, and took out an indeterminate permit, pursuant to the provisions of an Act of the General Assembly of 1921, chapter 93 (p. 197), and that said permit has not been forfeited, but defendant is now operating under it"; that defendant constructed and maintains its freight depot west of Birdsell street; that in the six months immediately preceding the commencement of this action, defendant hauled on its tracks laid in LaSalle avenue, eastwardly through said residence district to the intersection of Michigan avenue, 100 freight cars received by it from different commercial railroads operated by steam, loaded with lumber, stone, brick, tile, cement,

steel and other building materials and fixtures; that in the next five months, before defendant surrendered its franchise and took an indeterminate permit, it hauled thereon to said point fifty-four freight cars so loaded, received by it from such railroads; and that in the three months next following such surrender, it so hauled ten more such freight cars so loaded; that, in the six months preceding the commencement of this action, defendant hauled upon and over its said tracks in LaSalle avenue, from the intersection of Michigan avenue westward through said residence district 171 gondola cars owned by it, loaded with sand, gravel and earth; that all of said freight cars so hauled in either direction were loaded with sand, gravel and earth excavated from the site of new buildings that were being constructed by the Hotel LaSalle and the Palace Theater at the corner of Michigan and LaSalle avenues, or with building materials, fixtures and construction outfits used in the construction and erection of said buildings; that they were hauled by electric engines "in trains of from one to four cars at one time, the usual number being three cars"; that defendant never appropriated under the power of eminent domain nor paid for any right as against plaintiffs to do any of said acts; that said acts make and their continuation will make plaintiffs' property on LaSalle avenue less desirable and less comfortable for residence purposes; and that defendant intends continuing in the future to haul freight of like kind in like freight cars on and along said avenue under the claim that it has the legal right to do so. Formal matters, showing that by proper steps plaintiffs had become entitled to maintain an action for an injunction if the acts complained of were unlawful and in violation of their legal rights, were also recited in the finding. But nothing was found (nor was anything alleged) from which the court

could determine that plaintiffs had suffered damages in any specific sum of money. And it was not found that the city has ever enacted an ordinance prohibiting or restricting the hauling of freight and freight cars on the street railroad in LaSalle avenue, except so far as the ordinance declaring in general terms that the franchise contract was ratified may have had that effect. The conclusions of law, as has been stated above, were, in substance, that the rights of the defendant company in the matter of hauling freight over its tracks in LaSalle avenue is still measured by the terms of its city franchise, as defined and limited before it was surrendered and an indeterminate permit was taken out, and that plaintiffs have the right to enjoin it from hauling any freight not permitted by the terms of the franchise at the time this action was commenced.

The principal question for decision is whether or not restrictions contained in the city franchise are in force notwithstanding the surrender of such franchise and acceptance of an indeterminate permit, or whether such surrender abrogated all the terms and provisions of the franchise, *in toto,* and left defendant subject to no regulations except what were imposed by contracts thereafter made, or by the provisions of statutes and ordinances passed for that purpose.

The "act concerning public utilities, creating a public service commission," etc., contains the following provisions: "§100. Every license, permit or franchise hereafter granted to any public utility shall have the effect of an indeterminate permit subject to the provisions of this act, and subject to the provision that the license, franchise or permit may be revoked by the commission for cause or that the municipality in which the major part of its property is situated may purchase the property of such public utility actually used and useful for the convenience of the public at any time as

provided herein," etc. "110. Every municipal council shall have power to determine by contract, ordinance or otherwise the quality and character of each kind of product or service to be furnished or rendered by any such public utility furnishing any product or service within said municipality and all other terms and conditions not inconsistent with this act upon which such public utility may be permitted to occupy the streets, highways or other public property within such municipality, and such contract, ordinance or other determination of such municipality shall be in force and *prima facie* reasonable. * * * To provide for a penalty for noncompliance with the provisions of any ordinance or resolution adopted pursuant to the provisions hereof. The power and authority granted in this section shall exist and be vested in said municipalities, anything in this act to the contrary notwithstanding. * * *" §§12773, 12783 Burns 1926, §§100, 110, Acts 1913 p. 167.

"Any public utility operating under an existing license, permit or franchise, from any county, city or town within the State of Indiana, shall, upon filing at any time prior to July 1, 1923, with the auditor or clerk of any such county, city or town which granted such license, permit or franchise, and with the public service commission of Indiana, a written declaration, legally executed, that it surrenders such license, permit or franchise, receive by operation of law in lieu thereof an indeterminate permit as provided in the act creating a public service commission, entitled (etc.) * * *, approved March 4, 1913, and such public utility shall hold such permit under all the terms, conditions and limitations of said act as fully and completely as if the same had been done prior to July 1, 1915." §12774 Burns 1926, Acts 1921 p. 197. And the original act had provided that upon the surrender of its franchise prior

to July 1, 1915, "such public utility shall hold such permit under all the terms, conditions and limitations of this act." §10052x3 Burns 1914, §101, Acts 1913 p. 167.

Those terms, conditions and limitations included a complete abrogation of all the contract rights of the public utility under its franchise, submission to 1-3. the orders of the Public Service Commission in the matter of fixing rates, keeping accounts, making reports to which the public shall have access, controlling the conduct of the company's business and determining what service shall be rendered, issuing stocks, bonds and notes, and leasing or conveying property, as well as holding all property devoted to the service of the public at all times subject to be purchased by the municipality at a price fixed by said commission, or fixed by a court to which the matter may be appealed. §§12672 *et seq.* Burns 1926, Acts 1913 p. 167. In other words, of all the rights which the public utility had obtained by its franchise contract with the city, the only one which remained to it was the right to operate its railroad over a certain route within the city, and to maintain and operate its tracks, poles, wires and cars in and upon certain designated streets, which right was conferred by the statute and held under the conditions specified in the statute that conferred it. And as the rights which the public utility now has were none of them conferred by the franchise contract with the city, but only by the provisions of the statute above quoted and orders of the Public Service Commission issued under authority of that and other statutes, the surrender of the franchise must be deemed to have abrogated and terminated all rights of the public utility under such franchise. Being terminated so far as it gave the public utility any rights and privileges as against the city and state, the franchise contract was no longer binding in favor of either city or state. A

contract that has ceased to bind one of the parties, no longer binds the other. It follows that the franchise contract between the defendant and the city of South Bend ceased to bind either party when it was surrendered and an indeterminate permit was accepted, and is no longer in force for any purpose. *Greensburg Water Co.* v. *Lewis* (1920), 189 Ind. 439, 453, 128 N. E. 103, 106.

The statute requires a public utility, after having surrendered a special franchise and accepted an indeterminate permit, to continue rendering adequate

4. service in the performance of all duties imposed by the statutes under which it was incorporated and by its articles of incorporation, and to continue charging the same rates, pursuant to the schedules in force before the special franchise was surrendered, until authorized by the Public Service Commission to change them.   §§7, 41, 45, Acts 1913 p. 167, §§12678, 12712, 12716 Burns 1926, §§10052g, 1005201, 10052s1 Burns 1914.   But the facts of this case do not bring it within the provisions of those statutes, and what was said in *Trustees, etc.*, v. *New Albany Water Works* (1923), 193 Ind. 368, 373, 374, 140 N. E. 540, 542, 27 A. L. R. 1274, with reference to the service which a public utility must give a consumer and the rates it may charge, after surrendering its franchise and before the Public Service Commission has ordered or consented to any changes, has no application here.

The extent of authority which a city might exercise, by ordinance or otherwise, under §110, *supra,* of the act concerning public utilities, etc., is not before the court for decision.   It does not appear that the city in any manner, other than by entering into and ratifying the franchise contract long before it was surrendered and abrogated, ever attempted to determine that, "the

quality and character of   *   *   *   service to be furnished or rendered by the public utility" should not include taking loaded freight cars to and from the site of a building in the course of construction on LaSalle avenue, carrying away the sand, earth and gravel excavated, and bringing in building materials, fixtures and construction outfits.   No ordinance to that effect was passed nor contract entered into except only the franchise contract that no longer exists.   On the contrary, the complaint expressly alleged, and the court specifically found, that the mayor of the city had consented to all that was done by defendant, and that plaintiffs had demanded of the city, by its proper officers, that action be taken to stop the transportation of freight and the operation of freight cars on LaSalle avenue, but that such officers refused to do anything.

Whatever power, if any, the city of South Bend may have in the matter of excluding freight and freight cars from LaSalle avenue, after the surrender and abrogation of the franchise contract, whether under §110, *supra,* of the act concerning public utilities, etc., or under the statutory power of a city, "to secure the safety of citizens and other persons in the running of trains of cars in and through such city, whether propelled by steam, electricity or other motive power," etc. (subd. 49, §10284 Burns 1926, §53, Acts 1905 pp. 219, 254), or in the exercise of the exclusive control which cities are given over their streets for many purposes, or of power conferred by any other statute or provision of a statute, it does not appear that the city has exercised or attempted to exercise such power to keep freight cars and freight off LaSalle avenue in the future.

The mere fact that freight being transported to or from a point on the street, so that it must in any event be carried upon and along the street or some part of it by some means, whether in drays,

trucks, or wagons running upon the pavement, or in cars running on rails, is hauled in freight cars operated with the consent of the city on the tracks of an interurban street railroad, does not, of itself, constitute an additional servitude. *Kinsey* v. *Union Traction Co.* (1907), 169 Ind. 563, on pp. 601, 617, 623, 624, 634, 81 N. E. 922, on pp. 936, 942, 946, 947; *Pittsburgh, etc., R. Co.* v. *Muncie, etc., Traction Co.* (1910), 174 Ind. 167, 176, 91 N. E. 600, 603; *Butler* v. *City of Kokomo* (1916), 62 Ind. App. 519, 525, 113 N. E. 391, 393. Nothing was found nor were any facts alleged to the effect that the cars and trains of cars in question were operated in a manner that was negligent, improper or unlawful, in case defendant had the right to operate them on LaSalle avenue at all, or that these plaintiffs sustained or would sustain any damage not in some measure sustained by all owners of property abutting on streets over which these cars were operated. Therefore, the conclusion must necessarily follow that plaintiffs did not show themselves entitled to an injunction.

The complaint was not drawn on the theory of asking damages for injuries done to plaintiff's property, nor were any facts found on which to base an 7. assessment of damages. And, in any event, seventy-one persons, each owning a different residence which was separately damaged could not unite in a joint action to recover the damages separately sustained. It follows that neither by the allegations of the complaint nor by the special finding of facts made by the court did plaintiffs show themselves entitled to recover anything whatever, either at law or in equity. All that is now before the court has relation to the right of plaintiffs, as the owners of city lots abutting on a street, to enjoin defendants from operating freight cars upon and along that street. This is not a controversy between a carrier and a shipper, nor

otherwise between a public utility company and members of the public over their right to service or the price they must pay for it, and, as to rights growing out of those relations, we decide nothing.

The judgment is reversed, with directions to restate the conclusions of law in conformity with this opinion, and to render judgment thereon in favor of the defendant.