CITY OF HUNTINGTON ET AL. *v.* NORTHERN INDIANA POWER COMPANY

[No. 26,661. Filed February 2, 1937. Rehearing denied April 27, 1937.]

*Claude Cline, W. H. Eichhorn, Arthur D. Sayler,* and *Daily, Daily & Daily,* for appellants.

*Bowers, Feightner & Bowers, Mart J. O'Malley,* and *Evans & Hebel,* for appellee.

TREMAIN, C. J.—The appellee filed this action in the Huntington Circuit Court on January 1, 1935, praying for a restraining order, temporary, and permanent in-

junctions to prevent an alleged illegal invasion of its rights as the sole utility engaged in domestic and commercial lighting, distribution, and sale of electric current, light, and power in the city of Huntington, as a public utility operating under an indeterminate permit, issued by the Public Service Commission on June 25, 1923, and for damages accrued to appellee by reason of appellants' actual and threatened invasion of such rights.

It is alleged that the city of Huntington is not and never has been engaged as a utility in the production and sale of electric current for domestic or commercial purposes, but for many years has owned and operated an electric generating plant for the purpose of producing current to light the streets and public buildings, and for strictly municipal purposes; that on the 1st day of January, 1935, the city of Huntington, through its officers and employees, without qualifying as a public or municipal utility and without complying with the requirements of law, threatened to proceed, and unless enjoined would proceed, unlawfully to engage in domestic and commercial lighting in the city of Huntington to the irreparable damage of appellee.

The complaint was verified and accompanied by bond; a restraining order was issued without notice to appellants. Summons and notice were served on appellants for a hearing on the issuance of a temporary injunction; upon hearing, January 26, 1935, the temporary injunction was granted restraining the acts of appellants and ordering the maintenance of the status quo until final hearing and order of court. Thereafter, the appellee filed three successive supplemental complaints, on to-wit: March 18th, May 20th, and June 19th, 1935, alleging in each that the appellants wholly ignored and disregarded the restraining order and temporary injunction, and proceeded, and were continuing to do all

the acts enjoined, and the appellee asked that the court grant to it a mandatory injunction to compel the appellants to remove their said equipment, alleged to be wrongfully and unlawfully installed.

The appellants filed answers in which the contention is made that the city of Huntington was on January 1, 1935, and had been for many years, a municipal utility, and had a right to extend its operations to serve the public generally. Replies were filed to these answers. The cause was submitted to the court for trial, and on August 16, 1935, the court entered judgment in favor of appellee.

The judgment of the court, upon the findings, decreed that the appellee and its predecessors owned and operated the sole and only utility lawfully engaged in the generation of electric current for domestic and commercial purposes, under a franchise issued from said city, until June 23, 1923, when the franchise was surrendered and an indeterminate permit was granted by the Public Service Commission of Indiana; that the city of Huntington was not on, or prior to, January 1, 1935, engaged in the business of furnishing electric current for domestic and commercial purposes.

The judgment further enjoined the appellants from extending its electric system to the homes and places of business in the city of Huntington; from generating any current or using any of the property, equipment, or facilities of said city for that purpose. It was ordered that the city of Huntington, the Board of Public Works and Safety, and the officers and employees, within twenty days from the date of the judgment, should disconnect all electric transformers from the transmission lines of said defendant city, and remove all polls, lines, wires, meters, and all other fixtures and appliances that had been installed since the first day of

January, 1935. Judgment for damages in the sum of $5.00 was given to the appellee.

Attention will be given to each error relied upon for reversal in the order in which they are presented by appellants. The first error relied upon by appellants is based upon the court's action in overruling their motion and objections to the bond filed by appellee prior to the granting and issuing of the temporary injunction on January 26, 1935, and overruling motions to require additional bond thereafter. The appellants claim that appellee has not complied with the statute authorizing the granting of either a temporary or permanent injunction, and therefore it was error to overrule each of said motions. They rely upon the statute which provides that no injunction or restraining order shall be granted until the party asking it shall enter into written undertaking with surety to be approved by the court, conditioned for the payment of all damages. Section 3-2107 Burns' Ind. St. 1933, Section 1067 Baldwin's Ind. St. 1934.

It is contended by appellants that by reason of the failure of the court to require bond so conditioned it was without jurisdiction of the subject matter in granting the temporary injunction. It appears from the record that two injunction bonds were approved by the court—the first, a personal bond filed January 1, 1935, conditioned as provided by statute—the second, a surety company bond filed January 16, 1935, limiting liability to $15,000.00. The defect in the bond, if any, is cured by the statute. Section 3-2512 Burns' Ind. St. 1933, §1142 Baldwin's Ind. St. 1934. Even if there were a defect in the injunction bond or bonds, that fact would not affect the jurisdiction of the court since the court may at any time require an additional bond. *Lewis et al.* v. *Rowland* (1892), 131 Ind. 103, 29 N. E. 922. It cannot be questioned that the Huntington Circuit

Court had general jurisdiction to try cases in which injunctive relief is sought. As stated in *Lewis et al.* v. *Rowland, supra* (p. 104) :

> "It is also a rule that where a court of general jurisdiction has jurisdiction of the subject-matter of the suit and of the parties, no judgment it may render within the issues is void, however erroneous it may be."

The finding and judgment of the court disclose that the appellants gave no heed to the restraining order or the temporary injunction, but continuously from the first day of January, 1935, to the time of the trial ignored such restraining order and temporary injunction, and continued to do all things enjoined by the court; that appellants continued the establishment and building of their equipment for the purpose of serving the public as a municipal utility; that appellants did not maintain the status quo, and were unaffected by said temporary injunction in so far as this action is concerned, and are in no position to complain about alleged defects in the bonds. The only purpose of the injunction bond was to protect the appellants in the event they were wrongfully prohibited from doing what they had a right to do, and if they had been wrongfully restrained and temporarily enjoined, they had a remedy upon the bond or bonds. But since the court has found and decreed that the appellants were in the wrong, no reason appears why they should be permitted to object to the form and sufficiency of the bonds, or either of them. As a matter of fact, the injunction suit could have been maintained without the restraining order, temporary injunction, or bonds, and a final judgment could have been rendered by the court permanently enjoining the appellants. The *Lake Erie and Western R. R. Co.* v. *Cluggish et al.* (1896), 143 Ind. 347, 42 N. E. 743. There was no error in overruling the appellants' objections to the bonds.

The Huntington Circuit Court had jurisdiction of the subject matter. Sections 2-101 and 3-2101 Burns' Ind. St. 1933, §§14, 1061 Baldwin's 1934; *Farmers', etc., Tel. Co.* v. *Boswell Tel. Co.* (1918), 187 Ind. 371, 119 N. E. 513.

The next objection by the appellants is based upon the overruling of appellants' demurrer to the appellee's second paragraph of reply to appellants' fifth and sixth paragraphs of answer. These paragraphs of answer relate to the same subject and charge that neither the appellee nor its predecessors held a legal franchise or indeterminate permit to the exclusion of the city of Huntington; that the appellee was using the city's streets and alleys by sufferance; that the city was then and theretofore engaged in performing all the functions and was possessed of all necessary requirements to make it at that time a public and municipal utility operating in said city; that the indeterminate permit held by appellee did not exclude the rights of the city; that the appellee possessed no right to operate in the city by virtue of an indeterminate permit issued to its predecessor on June 25, 1923, upon the surrender of a franchise claimed to have been granted to its predecessor, because the record does not show that it was accepted; that appellee abandoned its manufacturing plant in 1924 in said city and thereafter brought its electric current into the city from the outside, thereby violating the terms of the original franchise.

The second paragraph of appellee's reply to said answer in substance alleged that even if it is not shown that appellee's predecessor made a formal acceptance of record of the franchise granted by the city, nevertheless the predecessor actually entered the said city and expended large sums in purchasing, erecting, and operating a public utility, and so continued for many years;

that the city accepted such service of said predecessor and made contracts with and thereby recognized such predecessor as a public utility; that on the 25th of June, 1923, the appellee's immediate predecessor, upon proper petition and showing, received from the state of Indiana an indeterminate permit under the Shively-Spencer Act, Chapter 76, Acts 1913, in a proceeding to which the city of Huntington was a party; that on November 30, 1923, on petition filed by appellee with the Public Service Commission of Indiana, to which said city was a party, the commission authorized the transfer of all the rights of the predecessor, Huntington Light and Fuel Company, to the appellee and authorized appellee to operate as a public utility under such permit.

The contention of the appellants is, as shown by memoranda attached to its demurrer, that said reply did not state facts sufficient to constitute an estoppel for the reason that both parties equally knew and were informed as to the facts pleaded in the reply; and that no misrepresentation or concealment of material facts on the part of appellants is shown.

The only purpose of the reply was to show that if appellee's predecessor did not make a formal acceptance of record of the franchise granted by the appellant city, nevertheless it did accept the franchise and acted upon it and continued the service for many years.

Prior to the enactment of the Shively-Spencer Act in 1913 cities and towns possessed the power and authority to grant franchises to public utilities. The effect of this act was to take from them all control over public utilities, and the same, since the passage of said act, are operated through the Public Service Commission as the agent of the state. When the appellee's predeces-

sor was granted an indeterminate permit and thereafter transferred all of its rights to the appellee, upon order of said commission in a proceeding to which the city was a party, the appellee thereby acquired full right to operate as a public utility in said city. *Greensburg Water Co.* v. *Lewis* (1920), 189 Ind. 439, 128 N. E. 103; *City of Logansport* v. *Public Service Comm.* (1931), 202 Ind. 523, 177 N. E. 249, 252; *Chicago, etc. R. Co.* v. *Guilfoyle* (1926), 198 Ind. 9, 152 N. E. 167, 170.

Under these authorities, and others which could be cited, it has been held uniformly that the right to control these utilities is primarily in the state; that the Public Service Commission became and is the sole authority operating in the state to grant franchises and to control the manner of operation. In the *Greensburg Water Company Case, supra,* the city of Greensburg, prior to 1913, had granted a franchise to a water company upon certain conditions and regulations therein named; that one of the conditions was that the water company should furnish free water service to the fountains and public buildings of the city. After the passage of the Public Service Commission Act, the water company accepted an indeterminate permit from the state through the Public Service Commission, and thereafter discontinued furnishing free water service. The matter was heard by the Public Service Commission, and it held that the water company could not be required to furnish free water service. The Legislature later passed a law authorizing and requiring utilities to furnish such free service. Acts 1919, page 709. Nevertheless, the water company refused and this court held, in the Greensburg Case, that the last act of the Legislature requiring the free service was unconstitutional. Upon appeal the relation between the water

company and the city of Greensburg before and after 1913 is discussed as follows (p. 542):

"Assuming that the city of Greensburg, at the time the franchise was granted, possessed the delegated power to contract with the water company as to rates of service, then it must follow that the franchise granted by the city and accepted by the company constituted a contract binding on both parties as to all its terms and provisions. In making the contract under such circumstances the city acted as an agency of the state under delegated authority, and the terms of such contract became binding on the state as well as on appellant. Neither the water company nor the state would have power to modify said contract or to abrogate it in whole or in part without the consent of the other contracting party; but the contracting parties —the state on one side and the water company on the other—might, by contract, each release the other from the obligations of the contract and thus abrogate it in its entirety as to both parties. (Citing authorities.) The act by which such a rescission or abrogation is accomplished involves all the essential elements of a contract. The parties to be affected must have legal capacity to contract; there must be a meeting and agreement of the minds as to the terms; and there must be a consideration. ... The unmaking of a contract is within the power which made it. Its unmaking is accomplished by the same means by which it was made, and when accomplished it is equally effectual. All parties are fully and finally released from the obligations of the abrogated contract, and neither party can restore it in whole or in part without the consent of the other.

"By §§101 and 102 of the act first cited, (Acts 1913) the State of Indiana made a proposal to the public utilities of the state operating under franchise contracts then existing. By the sections cited the state proposed that any such utility might surrender its franchise contract to the state and be released from the obligations thereby imposed on certain terms and conditions specifically stated in the act. The proposal was open to all such utilities of the state and might be accepted by any in the manner and within the time prescribed in §101,

*supra.* ... By this acceptance the minds of the parties met and agreed on the terms of the proposal embodied in the act and a contract was thereby concluded between the state and appellant whereby all the terms, conditions and provisions of the existing franchise agreement were abrogated and rescinded. The state was a party to the franchise agreement which the city of Greensburg made with the appellant, acting for the state under delegated authority. Later the state, acting directly through its legislature in making the proposal and through its Public Service Commission, on which it had conferred express authority in the premises, entered into a contract with appellant by the terms of which such franchise agreement was abrogated and rescinded *in toto* as to both parties. 'The extinguishment of the obligatory features of the old franchise as to one side by necessary inference operated to extinguish such features as to the other'." Citing authorities.)

The rule announced in the Greensburg Case has been followed in other cases decided in this court. With that rule in mind it may be stated that when the appellee's predecessor accepted the offer of the state to surrender its franchise and accepted an indeterminate permit under the Shively-Spencer Act, it thereby abrogated all the terms and conditions theretofore existing between the city of Huntington and appellee's predecessor. The state of Indiana thereby granted to such predecessor the right to operate as a utility in said city under the new contract between the state and appellee's predecessor. This was done in 1923 before the appellee purchased the property from its predecessor. The appellee purchased the property on the 30th day of November, 1923, upon a petition filed with the Public Service Commission to which the city of Huntington was a party and had full notice. The authority to purchase, when granted, carried with it all the rights, power, and authority formerly held by its predecessor.

When appellee's predecessor surrendered its fran-

chise in 1923, it was required by section 101, Acts 1913, p. 202, to file a written declaration with both the ■ clerk of the city of Huntington and the Public Service Commission of its desire to accept in lieu thereof an indeterminate permit. This was done. No objection was made by the city. The only distribution of electric energy, by the city at that time from its plant, was to light the streets and public buildings. The city made no effort to distribute electricity for domestic and commercial purposes until January 1, 1935. That service had been furnished by appellee and its predecessors for many years prior to that date, and under an indeterminate permit continuously since 1923. Section 98 of the 1913 Act provides that no municipality shall construct a plant or any equipment where there is in such municipality a public utility engaged in a similar service under an indeterminate permit without first securing from the commission a declaration of public convenience and necessity.

Appellants rely upon the fact that in 1914 the city was granted permission to distribute electricity for domestic and commercial purposes. However, this authority was never exercised. The city will not be permitted to hold such right in a dormant state, and, after a public utility has operated under legal authority for many years and expended large sums to serve the public, undertake to operate under the condition here presented.

Having in mind the well settled rule in this state that a city, in distributing electricity, acts in either of two capacities: (1) Governmental, when furnishing electric energy to light its streets and public buildings, or (2) as a private corporation when selling such energy for domestic and commercial purposes (*City of Logansport* v. *Public Service Commission, supra*), what is the legal status of the city of Huntington in its claim to the

right to serve the public under its permit of 1914? It is not aided by the fact that it furnished electricity upon two isolated occasions to the CCC Camp and for an entertainment hall, for which it received a small remuneration.

The question as to the relative rights of private corporations to use the streets for the installation of wires for telegraphic and telephone service is discussed by the United States Supreme Court in the case of *New York Electric Lines* v. *Empire City Subway* (1914), 235 U. S. 179, 35 S. Ct. R. 72, 59 Law Ed. 184. The facts in that case disclose that the appellant was granted the first franchise to occupy the streets of that city. It failed and neglected to complete its preliminary work in order to serve the public. After some years another franchise was granted to the appellee, which installed the equipment and served the public. Thereupon the appellant brought the action to enforce its right under its earlier franchise. The court held that it had lost such right by non-user. It was held that the appellant's grant became effective when made and accepted and protected it in starting the enterprise to render service for public benefit; that the failure to so exercise it as contemplated was ground for revocation or withdrawal, although there was no express authority for such revocation reserved in the franchise. The court stated (p. 194) :

"And when it is said that there is vested an *indefeasible* interest, easement, or contract right, it is plainly meant to refer to a franchise not only granted but exercised in conformity with the grant. It is a tacit condition annexed to grants of franchises that they may be lost by mis-user or non-user. (Citing authorities.) The condition thus implied is, or course, a condition subsequent. The same principle is applicable when a municipality under legislative authority gives the permission which brings the franchise into being; there is necessarily implied the condition of user. The con-

ception of the permission as giving rise to a right of property in no way involves the notion that the exercise of the franchise may be held in abeyance for an indefinite time . . . . Although the franchise is property, 'it is subject to defeasance or forfeiture by failure to exercise it'."

See McQuillin, Municipal Corporations, Vol. 4 (2nd), sections 1795, 1796, 1797, 1798, and annotations. The rule there announced and supported by abundant authority amounts to saying that when the Public Service Commission of Indiana, in 1914, granted to the city of Huntington authority to engage in domestic and commercial lighting, it must use that grant for public benefit. It was granted upon the implied condition that it would be so used. The non-user for more than twenty years amounted to a forfeiture. Also see *Capital City Light & Fuel Co.* v. *Tallahassee* (1902), 186 U. S. 401, 411, 22 S. Ct. R. 866; *Kavanaugh* v. *St. Louis* (1909), 220 Mo. 496, 119 S. W. 552; *State ex rel.* v. *East Fifth Railway Co.* (1897), 140 Mo. 539, 41 S. W. 955, 38 L. R. A. 218, 62 Am. St. Rep. 742; *Louisville Trust Co.* v. *Cincinnati* (1896), 76 Fed. 296, 22 C. C. A. 334; *Security Trust Co.* v. *Grosse Pointe* (1929), 32 Fed. (2d) 706; *Cawker* v. *Meyer* (1911), 147 Wis. 320, 133 N. W. 157, 37 L. R. A. (NS) 510; *Allen* v. *Railroad Commission* (1918), 179 Cal. 68, 175 Pac. 466, 8 A. L. R. 249.

The same question has been considered in other states. In *Wisconsin etc. Co.* v. *Menasha* (1914), 157 Wis. 1, 145 N. W. 231, 234, a similar situation was presented. The city owned and operated a generating and distribution plant for the purpose of lighting the streets and public buildings of the city of Menasha. Wires were extended to the residence of the mayor located near the city hall, and to that of his brother near by, and electricity was furnished to them for a consideration paid. After a time this use was discontinued. Later the question arose as to whether or not the city of Menasha was operating as

a public utility. This question was presented by proof of the fact that it sold current for compensation to the mayor and his brother. The court denied the city's contention and held that such sales were not made under a pretense of operating as a utility and could not aid the court in determining whether the city was a municipal utility.

If the city of Huntington was or is engaged in rendering service for domestic and commercial purposes, as it contends, it is in no better or different position from an independent corporation holding a permit from the Public Service Commission which it has not exercised by serving the public. The city of Huntington waited for more than twenty years after it was granted a permit by the Public Service Commission before it made an effort to serve the public, and when it did make an effort, it did not do it in the manner prescribed by statute. It is evident that the city officials understood this condition in 1929. Evidence was introduced that on April 18, 1929, the city of Huntington filed a petition with the Public Service Commission asking for a certificate of convenience and public necessity, and praying that the commission permit the city to engage in the sale of electric energy to its citizens. A hearing was had and an order entered July 3, 1931, denying the petition. The order sets out in full Section 98 of the Shively-Spencer Act, and then says:

"In the opinion of the Commission the petitioner failed to make any showing which would warrant the granting of the permission prayed for, in view of the provisions of the statutes.

". . . and finds that the petition of the city of Huntington for a permit to engage in commercial lighting should be denied."

It was so ordered. No appeal in any form was taken from this order. In so far as the record shows it was in full force and effect January 1, 1935, and at the time

of the trial. This evidence was uncontradicted. By the petition the appellant tacitly admitted that it was not then an electric utility, or if it ever had been, it had lost its rights by non-user. *Chicago Rys. Co.* v. *Commerce Commission* (1929), 336 Ill. 51, 167 N. E. 840.

The city of Huntington, with full knowledge of the issuance of the indeterminate permit and with full knowledge of the sale and purchase of the public utility by the appellee in November, 1923, has permitted appellee to operate within said city during all the time following that purchase and to extend means of transporting electric current to the citizens and the public generally, and is in no position, under the law and the facts, to resist such continuation. Upon the facts stated in the fifth and sixth paragraphs of answer of appellants, and the second paragraphs of appellee's reply, there was no error in overruling the demurrer to the reply.

The appellants question the sufficiency of the evidence to sustain the judgment, and devote much space to a discussion of the facts as presented to the trial court. The principal issue between the parties was whether or not, on the first day of January, 1935, when this action was filed in the lower court and for many years prior thereto, the city of Huntington was and had been engaged as a municipal utility in the distribution of electric energy for domestic and commercial lighting purposes. The appellants asserted that it was so engaged. This was denied by the appellee. The issues in the case presented that question to the trial court as a fact to be determined. The evidence disclosed without dispute that the city did operate an electric generating plant in connection with its water works system and did furnish electric energy to light the streets, public parks, and public buildings of said city; that this was done pursuant to the authority

of the Public Service Commission of Indiana. A large amount of evidence is in the record upon that subject which consisted of oral testimony by citizens and former officials of the city of Huntington, and much documentary evidence, some of which is heretofore mentioned. After hearing all the evidence and considering the facts and the law, the trial court found for the appellee; that it was the only public utility operating in the city of Huntington on the first day of January, 1935, in the distribution of electricity for a consideration.

The trial court heard the evidence and was in a position to weigh it and decide what it would or would not believe. This court will not undertake to weigh the evidence upon appeal. *Hammond Theatrical Company* v. *Gregory et al.* (1935), 208 Ind. 31, 194 N. E. 631. It is permissible to say in this particular case that the evidence upon the questions presented to the trial court overwhelmingly sustains the finding and judgment. From the evidence in the record, it appears that the officers of the city of Huntington, without following the well known proceeding to establish the city as a public utility, undertook to operate in defiance of the law.

It is well settled that a municipal corporation is a subordinate branch of the domestic government of the state and possesses only those powers expressly granted by the Legislature, those necessarily or fairly implied in or incident to powers expressly granted, and those indispensable to the declared purposes and objects of the municipality. It is generally held that the power of a municipality to own and operate a public utility is considered to be either governmental or private, depending upon the character of the service rendered. As said in *City of Logansport* v. *Public Service Comm., supra* (p. 531) :

"A city in the operation of an electric light utility, selling service to the public, acts in its

private business capacity and not in its public governmental capacity (regardless of whether its power to so act is inherent, implied or is granted by statute). The dual capacity or twofold character possessed by municipal corporations is: (1) governmental, public, or political; and (2) proprietary, private or quasi-private. In its governmental capacity a city or town acts as an agency for the state for the better government of those who reside within its corporate limits, and, in its private or quasi-private capacity, it exercises powers and privileges for its own benefit. . . . When a municipal corporation engaged in an activity of a business nature rather than one of a governmental nature, such as the supply of light or water or the operation of a railroad, which is generally engaged in by individuals or private corporations, it acts as such corporation and not in its soverign capacity."

Applying this proposition to the facts in the instant case, the city of Huntington, in its governmental capacity, could and did furnish electric current to light the streets and public buildings of the city. The trial court found that this was the only capacity in which the city was engaged. If it engaged in supplying electric current for domestic and commercial purposes, it was then acting in a private business capacity, and not exercising what it claims was its inherent governmental power. The decision of the trial court is not contrary to law.

The appellants expressly disclaim any rights by virtue of Chapter 190, Acts 1933. Quoting from appellants' brief, page 285:

"The Public Service Commission Act of 1933 has no application to the facts of this case."

Therefore the court does not consider any of the provisions or amendments of the 1933 Act.

The appellants mildly question appellee's right to

operate for the reason that it brought the current into the city from beyond the city limits, thereby violating a provision in the original franchise which provided for a forfeiture of the franchise "whenever it shall have abandoned the use of their said plant for one year." There is no claim that the service had been abandoned. The objection is unavailing. *Indiana Service Corp.* v. *Town of Warren* (1934), 206 Ind. 384, 189 N. E. 523.

Upon a fair consideration of the facts and the law, this court is of the opinion that no reversible error is shown.

Judgment of the lower court is affirmed.

Treanor, J., dissents.

### DISSENTING OPINION

TREANOR, J. DISSENTING.—Under the law of Indiana the municipality of Huntington in 1914 acquired full power to own and operate a public utility. The fact that the operation of a utility is treated by the law of this state as a non-governmental function does not change the fact that the municipality of Huntington acquired the legal power to engage in the business of operating the utility. I do not believe that this power can be lost by non-users. The fact that public officials of Huntington did not immediately proceed in the business of furnishing electric power to private individuals can not be utilized by the appellee as a legal ground for forfeiture of such power by the municipality of Huntington. To allow the contention of appellee in this case runs counter to the general rule that prescriptive rights can not be acquired against the State or its political subdivisions, and the corollary that the failure of officials to take action to assert rights or powers of the State or

its subdivisions can not be taken advantage of to acquire prescriptive rights by private individuals.

The power of a municipal corporation to own and operate a public utility belongs to it as a political subdivision of the state; and the quality of the power is not different from the power to carry on strictly governmental activities. The classification of municipal functions into governmental and non-governmental has been used chiefly as a basis for relieving municipalities from liability for negligence of agents; but the considerations therein involved afford no logical basis for the conclusion that a municipal corporation can lose rights or powers by non-user even though these relate to non-governmental functions.

Furthermore, courts have no power to grant indeterminate permits to persons or corporations, private or municipal, to engage in the business of a public utility. Nor do they have power to revoke such permits either directly by adjudicating a cause for revocation or indirectly by adjudicating a forfeiture. If cause for forfeiture exists the only tribunal which has jurisdiction legally to determine the existence of that cause is the Public Service Commission of Indiana, subject only to the limited judicial review allowed by law. The Public Service Commission has not entered any order of revocation of the indeterminate permit which the Commission granted to the city of Huntington; and in the absence of such revocation the Huntington Circuit Court had no power to enjoin the city of Huntington from acting as a public utility.