



**FILED**

Jun 27 2018, 3:31 pm

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

I N   T H E

# Indiana Supreme Court

Supreme Court Case No. 18S-EX-49

## Hamilton Southeastern Utilities, Inc.

*Appellant (Petitioner below),*

—v—

## Indiana Utility Regulatory Commission, et al.

*Appellees (Respondents below).*

---

Argued: March 15, 2018 | Decided: June 27, 2018

Appeal from the Indiana Utility Regulatory Commission, No. 44683
The Honorable Aaron A. Schmoll, Senior Administrative Law Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 93A02-1612-EX-2742

---

**Opinion by Justice David**

Chief Justice Rush, Justice Massa, Justice Slaughter, and Justice Goff concur.

**David, Justice.**

In response to a low rate of return over a six-year period, Hamilton Southeastern Utilities, Inc. ("HSE") petitioned the Indiana Utility and Regulatory Commission ("the Commission") to approve an 8.42% increase in its rates. The Commission, in several findings of fact, authorized a rate and charges increase much lower than HSE requested. HSE appealed the Commission's decision and named the Commission as a respondent. Upon HSE's motion, and over the Commission's objection, the Court of Appeals dismissed the Commission, concluding that it was not a proper party to the appeal. We now address whether the Commission was a proper party on appeal. As for the issue raised in the Indiana Office of Utility Consumer Counselor's ("the OUCC") petition—whether the Commission may include in HSE's revenue requirement the state and federal income taxes paid by HSE's individual shareholders—we summarily affirm the Court of Appeals.

## Facts and Procedural History

HSE is a for-profit public utility that provides sewage collection and treatment services to customers in Hamilton County, Indiana. HSE relies on an affiliate company, Sanitary Management & Engineering Company, Inc. ("SAMCO"), to carry out the operation, maintenance, and engineering functions of HSE's sewage operations. As a public utility, HSE is subject to regulation by the Commission.

In a 2010 order, the Commission approved HSE to charge a flat monthly rate of $34.63 per single family unit and, in establishing that rate, it authorized a 9.8% rate of return. Since then, largely due to an aging system and sewage overflows, HSE incurred significant maintenance and operating costs, totaling over $11 million. These increased costs affected HSE's profitability; HSE averaged a 1.9% rate of return between 2009 and 2015—much lower than the Commission-approved 9.8%.

On September 24, 2015, HSE filed a rate case with the Commission requesting, in relevant part, approval of an 8.42% increase to its rates. The increase would produce just under $1 million of additional yearly

revenue. The Commission conducted a hearing to consider HSE's petition. The OUCC, a state agency tasked with representing the interests of consumers in utility matters, advocated for a 14.01% rate reduction. The OUCC argued that HSE could operate more efficiently by ending its relationship with SAMCO and performing those tasks outsourced to SAMCO with in-house employees. After reaching certain agreements with the OUCC, HSE reduced its rate increase request to 6.27%.

The Commission ultimately approved an increase much lower than HSE had hoped for; it issued an order authorizing only a 1.17% increase in HSE's rates and charges. The Commission reasoned, in part, that expenses related to SAMCO should be eliminated from HSE's working capital allowance. The Commission did, however, authorize HSE to include in its rates the state and federal income tax liability that is passed through to, and paid by, HSE's shareholders.

HSE appealed, arguing that the Commission erred in excluding some expenses from its rates. The OUCC cross-appealed, arguing that HSE should not be permitted to recover income tax liability in its utility rate because, as an S Corporation, HSE has no tax liability of its own as a matter of law. *Hamilton Southeastern Utils., Inc. v. Ind. Util. Regulatory Comm'n*, 85 N.E.3d 612, 617, 625 (Ind. Ct. App. 2017). HSE initially named the Commission as an appellee-respondent, but then moved to dismiss the Commission, claiming that it had mistakenly identified the Commission as a party. *Id.* Over the Commission's objection, the Court of Appeals granted HSE's motion to dismiss the Commission. *Id.* at 626.

The Court of Appeals then made the following determinations: (1) the Commission acted arbitrarily in excluding SAMCO-related expenses (the 3% contract increase and 10% management fee) from HSE's rate calculation; (2) the Commission was within its discretion to exclude the paid-in-arrears SAMCO expenses from HSE's calculation of working capital; (3) the Commission did not err in its conclusion regarding HSE's system development charge based on the evidence presented; and (4) the Commission properly permitted HSE to recover its passed-through income tax liability in its rates. *Id.*

The OUCC and the Commission filed separate petitions seeking transfer.  We granted both petitions, thereby vacating the Court of Appeals' opinion.  Ind. Appellate Rule 58(A).

# Discussion and Decision

The OUCC and the Commission challenge separate portions of the Court of Appeals' decision.  While the OUCC argues that the Commission erred in allowing HSE to include in its rate calculation federal and state income tax paid by shareholders—a determination that the Court of Appeals affirmed—the Commission argues that the Court of Appeals erred in granting HSE's motion to dismiss the Commission as an improper party on appeal.  We elect to address only the Commission's question: whether the Commission was a proper party on appeal.  As for the Commission's inclusion of income taxes in HSE's rate calculation, we summarily affirm the Court of Appeals.

## I.  The Commission was a proper party on appeal.

The Commission seeks to appear as a party on appeal to defend its own order, arguing that while other parties sometimes intervene to challenge the appellant's position, those third parties may not always represent the entirety of the Commission's interest in defending the order.  We agree with the Commission and refrain from disturbing long-standing custom and practice that have treated the Commission as a proper party on appeal for over a century.

### A.  The Legislature has remained silent on whether the Commission may appear on appeal.

Chapter 1, Article 1, Title 8 of the Indiana Code establishes the Commission, but sheds little light on the Commission's role on appeal.  It instructs the Commission to "be an impartial fact-finding body" in all hearings it conducts and to "make its orders in such cases upon the facts impartially found by it."  Ind. Code § 8-1-1-5(a).  It also explains that

"[t]he [C]ommission shall in no such proceeding, during the hearing, act in the role either of a proponent or opponent on any issue to be decided by it." Ind. Code § 8-1-1-5(a). But these mandates set forth the Commission's impartiality in *its own proceedings*, not when defending its orders on appeal.

Of course, absence of legislative guidance on the Commission's role on appeal does not create a presumption that the Commission's participation in defending its own rulings is permitted. So, we turn to other factors to be sure that the Commission should remain a named party. Specifically, we examine custom, practice, and public policy.

## B. Long-standing custom and practice persuades us that the Commission should continue appearing on appeal as it deems necessary.

The legislature may not have yet weighed in on whether the Commission may appear on appeal, but custom and practice favor the Commission's position. For over a century, the Commission and its predecessor, the Public Service Commission, have defended appeals from its final order on numerous occasions. *See generally Winfield v. Pub. Serv. Comm'n*, 118 N.E. 531 (Ind. 1911) (defending an order increasing telephone company rates); *Kosciusko County Rural Electric Membership Corp. v. Pub. Serv. Comm'n*, 77 N.E.2d 572 (Ind. Ct. App. 1948) (defending an order granting a certificate of public convenience and necessity to a service company); *Sizemore v. Public Service Comm'n*, 177 N.E.2d 743 (Ind. Ct. App. 1961) (defending an order modifying interstate telephone rates); *Stucker Fork Conservancy Dist. v. Ind. Util. Regulatory Comm'n*, 600 N.E.2d 955 (Ind. Ct. App. 1992) (defending an order classifying a district as a "public utility"); *Nextel W., Corp. v. Ind. Util. Regulatory Comm'n*, 831 N.E.2d 134 (Ind. Ct. App. 2005) (defending an order establishing and administering an Indiana Universal Service Fund). The Commission has ordinarily appeared on appeal to argue one of several positions: (1) that its order was in the public interest, (2) that it was based on the record evidence, or (3) that the Commission's decision is entitled to deference. Dismissal of the Commission runs counter to a long-standing practice of allowing it to

defend its own orders—a practice that the legislature has left intact by remaining silent throughout the past one hundred years.

Moreover, similarly situated executive branch agencies enjoy the ability to defend their decisions on appeal, both through explicit legislative directive and as a result of legislative acquiescence to custom and practice. Unlike in appeals from other Indiana administrative agencies, appeals of the Commission's final orders skip the trial court and are taken directly to the Court of Appeals. Ind. Appellate Rule 9(A)(3). Indiana has three other administrative agencies for which judicial review bypasses the trial court and is heard in the first instance by the Court of Appeals; those agencies are the Workers Compensation Board, the Indiana Civil Rights Commission ("the ICRC"), and the Review Board of the Department of Workforce Development ("the Review Board"). Ind. Appellate Rules 2(A), 9(A)(3). Two of the three agencies—the ICRC and the Review Board—appear regularly to defend their orders on appeal. [1] While the Review Board appears on all appeals of its orders because appellants are statutorily mandated to name it as an appellee, Ind. Code § 22-4-17-12(b), statutes governing the ICRC are silent on whether the ICRC is a proper party to an appeal of its own order. Yet, like the Commission, the ICRC regularly appears on appeals and we summarily affirmed the ICRC's ability to challenge its own orders, finding that the ICRC has an interest in ensuring that its orders are enforced. *Filter Specialists, Inc. v. Brooks*, 879 N.E.2d 558, 570 (Ind. Ct. App. 2007), *vacated in part and summarily affirmed in part*, 906 N.E.2d 835, 845 (Ind. 2009). We find that the Commission also has an interest in ensuring that its orders are enforced. That interest is critical to its mission, and favors permitting the Commission's participation in defending challenged orders.

---

[1] The Workers Compensation Board has no statute regulating its appearance on appeal, but it does not routinely appear as an appellee in appeals from its orders.

## C. Public policy also supports a finding that the Commission should not have been dismissed.

As the Commission noted in its briefing, sometimes in cases involving issues for which no parties with opposed interests come forward, the Commission ends up being the only appellee. In other cases where parties with opposed interests do challenge the appellant, the Commission may still be the only appellee to submit a brief. Although the case at bar involves opposing parties advocating for competing interests, we worry that a holding as broad as HSE suggests and the Court of Appeals has issued—dismissing the Commission as an improper party by virtue of its role as a neutral fact finder—would not only do away with long-standing practice that the legislature has not disturbed in over one hundred years, but would also frustrate the effectiveness of challenges to appeals given that other parties seldom represent the entirety of the Commission's interests. And in those instances where the Commission concludes that its interests are adequately represented, it can simply choose not to participate in the appeal. We find that the Commission's collective expertise puts it in a favorable position to determine whether its interests are being adequately represented.[2] Requiring the Commission to petition to intervene promotes inefficiencies and the potential for unnecessary litigation and/or appeals. The Commission's ability to determine when its participation is necessary to defend its orders on appeal promotes a more efficient appeals process and upholds a century of accepted practice in the courts.

---

[2] The Commission does not defend all, or even most, of its orders on appeal, but does so when it determines the public interest is at stake.

## II. Neither the Commission's administrative role nor the existence of competing parties on appeal persuade us that the Commission should be deemed an improper party.

HSE makes several arguments against allowing the Commission to appear as a party, but we do not find those arguments sufficiently persuasive.

In response to the Commission's petition, HSE frames the Commission's role in its initial proceedings as judicial in nature, but that is far from accurate. The Commission's main function in this proceeding was not adjudicative; rather, it was legislative in nature. The Commission carries broad authority for regulatory oversight of all public utilities and, in doing so, it sets rates for HSE. "[R]ate-making is a legislative, not a judicial function . . . ." *Pub. Serv. Comm'n v. City of Indianapolis*, 131 N.E.2d 308 (Ind. 1956). When HSE filed a petition with the Commission, it was not to settle a dispute with another party. It sought permission to increase its rates. The Commission uses its technical expertise to set rates that are reasonable for ratepayers while also allowing a reasonable profit for the utility, which incentivizes it to remain in business. As such, the proceedings that the Commission held were not akin to those before a trial court.

HSE further claims that the Commission is an unnecessary party because, even without the Commission, there are "clearly opposing parties advocating for competing interests." Consol. Brief of Hamilton Southeastern Utilities in Response to Petitions to Transfer at 19. As explained above, while there certainly are opposing parties with competing interests involved here, that is not always the case. Sometimes the Commission is the only appellee. And even where other appellees participate in an appeal, the participating parties' interests do not necessarily encompass the entirety of the Commission's interest in defending the order.

Here, two appellees opposed HSE's appeal: the OUCC and the Commission. The Commission's dismissal left only the OUCC as an

appellee, but the OUCC and the Commission's interests did not align perfectly. While the OUCC is tasked with protecting consumers in utility matters—an interest that overlaps with the Commission—the Commission's interests are much broader than those of the consumer protection agency (and in some instances, the interests conflict with one another). The Commission's role "is to insure [sic] that the public utilities provide constant, reliable, and efficient service to the citizens of Indiana." *N. Indiana Pub. Serv. Co. v. U.S. Steel Corp.*, 907 N.E.2d 1012, 1015 (Ind. 2009). The OUCC even argued against portions of the Commission's order; specifically, the OUCC challenged the Commission's determination to include in HSE's rate calculation federal and state income tax paid by HSE's shareholders.

The Commission's administrative role was not adjudicative in nature. And, at least in some cases, only the Commission can fully defend its own orders on appeal. Accordingly, we are not persuaded by HSE's arguments and find that the Commission was a proper party to the appeal.

# Conclusion

We reverse the Court of Appeals' dismissal of the Commission as a party and now hold that the Commission was a proper party to the appeal. Because the Court of Appeals found that the Commission acted arbitrarily in excluding SAMCO-related expenses from HSE's rate calculation without giving the Commission an opportunity to defend its order, we also reverse on that issue and remand to the Court of Appeals with instructions to permit the Commission an opportunity to brief the issue. As for the rest of the Court of Appeals' opinion, we summarily affirm.

Rush, C.J., and Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT
Randolph L. Seger
Brian W. Welch

Michael T. Griffiths
Bingham Greenebaum Doll, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Curtis T. Hill, Jr.
Attorney General of Indiana

Thomas M. Fisher
Solicitor General

Patricia C. McMath
Lara Langeneckert
Julia C. Payne
Deputy Attorneys General

Beth E. Heline
Jeremy Comeau
Indiana Utility Regulatory Commission
Indianapolis, Indiana

William Fine
Daniel M. Le Vay
Scott C. Franson
Abby R. Gray
Indiana Office of Utility Consumer Counselor
Indianapolis, Indiana