

I N  T H E

# Indiana Supreme Court

Supreme Court Case No. 23S-EX-129



FILED

May 30 2024, 11:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## The City of Carmel, Indiana,
*Appellant (Plaintiff below)*,

—v—

## Duke Energy Indiana, LLC, Indiana Utility Regulatory Commission, and Indiana Office of Utility Consumer Counselor,
*Appellee (Defendants below)*.

---

Argued: September 21, 2023 | Decided: May 30, 2024

Appeal from the Ind. Utility Regulatory Commission -- No. 45482
The Honorable James F. Huston, Chairman, The Honorables Sarah E. Freeman,
Stefanie Krevda, David L. Ober, and David E. Ziegner, Commissioners, and
The Honorable Jennifer L. Schuster, Senior Administrative Law Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 22A-EX-88

---

### Opinion by Justice Massa

Chief Justice Rush concurs.

Justice Slaughter concurs with separate opinion.

Justice Goff concurs in result with separate opinion.

Justice Molter concurs in part and dissents in part with separate opinion.

**Massa, Justice**

Duke Energy and the Indiana Utility Regulatory Commission seek review of a Court of Appeals' decision dismissing the Commission as a party on appeal and holding that ordinances adopted by the City of Carmel affecting the utility are neither unreasonable nor void. Having vacated the Court of Appeals by granting transfer, we now affirm the Commission.

# Facts and Procedural History

Indiana Code section 8-1-2-101 ("Section 101") gives municipalities authority to enact ordinances that determine the means and methods in which a public utility occupies the municipality's space. This authority is not, however, unfettered. The same code provision gives the Commission the power to determine whether such ordinances are unreasonable and thus void. The City of Carmel adopted two relevant ordinances in 2019: Ordinance D-2492 ("Underground Ordinance") and D-24910 ("Relocation Ordinance") (collectively, the "Ordinances"). The Underground Ordinance prohibits the construction of above-ground utility lines, poles, or related structures in Carmel's right-of-way unless authorized by Carmel. The Relocation Ordinance explains the procedures to be followed when a utility facility must be relocated due to road, street, sidewalk, or trail projects. The Ordinances impose all costs on the utilities "unless the City agrees otherwise." Appellant's App. Vol. II, p. 44.

After adopting the Ordinances, Carmel began two municipal improvement projects, which required Duke to relocate distribution facilities underground. Carmel and Duke could not agree on which party should bear the costs of relocation, estimated in excess of $500,000. Carmel made the first legal move, filing a complaint with the Commission asking it to uphold the Ordinances as reasonable, order Duke to relocate its facilities underground, and order Duke to pay the relocation costs.

Following a hearing, the Commission rejected Carmel's request and instead issued an order finding the Ordinances unreasonable and void

under Indiana Code section 8-1-2-101. Carmel appealed.[1] In a separate order, the Court of Appeals struck the Commission's brief and dismissed the Commission as a party to the appeal. *City of Carmel v. Duke Energy Ind., LLC*, 198 N.E.3d 1182, 1186 n.1 (Ind. Ct. App. 2022). In a published opinion, the Court of Appeals reversed the Commission's order that the Ordinances were unreasonable and thus void. *Id.* at 1196.

Both the Commission and Duke sought transfer, which we granted, thus vacating the appellate opinion. Ind. Appellate Rule 58(A).

# Standards of Review

The General Assembly established the Commission "as a fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature." *N. Ind. Pub. Serv. Co. v. U.S. Steel Corp.*, 907 N.E.2d 1012, 1015 (Ind. 2009) (citations omitted) [hereinafter *NISPCO*]. Review of Commission orders is two-tiered.

First, "it requires a review of whether there is substantial evidence in light of the whole record to support the Commission's findings of basic fact." *Id.* at 1016 (citing *Citizens Actions Coal. of Ind., Inc. v. N. Ind. Pub. Serv. Co.*, 485 N.E.2d 610, 612 (Ind. 1985)). Under this substantial evidence standard, the Commission's "order will stand unless no substantial evidence supports it." *Id.* (citing *McClain v. Rev. Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1317–18 (Ind. 1998)). The reviewing appellate court is to neither reweigh the evidence nor assess the credibility of witnesses. *Id.*

Second, the appellate court reviews whether the order contains "specific findings on all the factual determinations material to its ultimate conclusions." *Id.* (citing *Citizens Action Coal. of Ind., Inc.*, 485 N.E.2d at 612). The Court reviews the "conclusions of ultimate facts for reasonableness,"

---

[1] Appeals from decisions of the Commission bypass the trial courts and go straight to the Court of Appeals. Ind. Code § 8-1-3-1; *see* Ind. Appellate Rule 9(A)(3); App. R. 2(A).

giving deference to the Commission in areas within its expertise. *Id.* (citing *McClain*, 693 N.E.2d at 1317–18).

Whether the Commission is a proper party involves a question of law, which we review de novo. *See Ind. Bell Tel. Co., v. Ind. Util. Regul. Comm'n*, 715 N.E.2d 351, 354 (Ind. 1999) (explaining the Commission's jurisdiction is reviewed de novo).

# Discussion and Decision

The Commission is responsible for assuring "public utilities provide constant, reliable, and efficient service" to all Hoosiers. *NIPSCO*, 907 N.E.2d at 1015 (citing *Ind. Bell Tel. Co.*, 715 N.E.2d at 354 n.3). "The Commission can exercise only power conferred upon it by statute." *Id*. (citing *United Rural Elec. Membership Corp. v. Ind. & Mich. Elec. Co.*, 549 N.E.2d 1019, 1021 (Ind. 1990)). The General Assembly granted the Commission the authority to determine whether a municipality's ordinance(s) that govern the placement of utilities are reasonable. I.C. § 8-1-2-101. Through its ratemaking expertise, the Commission can determine how one municipality's ordinances and projects can impose resulting costs to utility customers statewide. Because we find the Commission's findings of fact are supported by substantial evidence and its conclusion of ultimate facts is reasonable, we affirm the Commission.

## I. The Commission is a proper party on appeal.

The panel below dismissed the Commission as a party to this appeal and struck its brief, explaining that "[b]ecause the [Commission] acted as a fact-finding administrative tribunal . . . it is not a proper party on appeal from its own decision." *City of Carmel*, 198 N.E.3d at 1186 n.1. The reasoning persuades when first encountered, **if** the Commission is to be strictly analogized to a trial court; but unlike trial courts, the Commission's authority is quasi-legislative, **not** judicial, as the Attorney General's reply brief notes, "even though adverse parties may be before [it], even in general rate cases." Reply Br. at 5; *see Ind. & Mich. Elec. Co. v. Pub. Serv. Comm'n*, 495 N.E.2d 779, 783 (Ind. Ct. App. 1986) (stating the

Commission acts in a "quasi-legislative" role when it promulgates regulations), *reh'g and trans. denied*.

There is neither a rule nor a statute that expressly provides for the Commission to be a named party when its own final order is appealed but it has been a "long-standing custom and practice." *Hamilton Se. Utils., Inc. v. Ind. Util. Regul. Comm'n*, 101 N.E.3d 229, 231 (Ind. 2018). For more than a century, the Commission, under its numerous names, has defended its orders on appeal, notwithstanding the appearance of other appellants and appellees. *See generally Winfield v. Pub. Serv. Comm'n of Ind.*, 118 N.E. 531 (Ind. 1911) (defending its denial of increasing telephone rates); *Kosciusko Cnty. Rural Elec. Membership Corp. v. Pub. Serv. Comm'n*, 77 N.E.2d 572 (Ind. 1948) (defending an order granting a certificate of public convenience and necessity to a service company); *Ind. Bell Tel. Co.*, 715 N.E.2d 351 (defending its jurisdiction and powers to regulate utilities); *Hamilton Se. Utils.*, 101 N.E.3d 229 (defending its order authorizing a lower-than-expected utility rate); *Ind. Off. of Util. Consumer Couns. v. S. Ind. Gas & Elec. Co.*, 200 N.E.3d 915 (Ind. 2023) (defending its order approving an electricity supplier's petition). "Dismissal of the Commission runs counter to a long-standing practice of allowing it to defend its own orders—a practice that the legislature has left intact by remaining silent throughout the past one hundred years." *Hamilton Se. Utils*, 101 N.E.3d at 232.

Public policy also supports the Commission as a proper party on appeal. *Id.* at 232–33. The Commission is a neutral fact finder that often defends issues where no opposition comes forward, it may be "the only appellee to submit a brief[,]" or it may oppose an issue because of its interests. *Id.* at 232. "That interest is critical to its mission, and favors permitting the Commission's participation in defending challenged orders." *Id.* Dismissal of the Commission would "frustrate the effectiveness of challenges to appeals" because all the Commission's interests must be represented. *Id.* at 232–33. Without the Commission's participation on appeal, Indiana appellate courts would lose the benefit of the Commission's expertise. *Id.* at 232–33. That expertise informs the Commission's determination of whether its interests are "adequately represented" and "promotes a more efficient appeals process and upholds a century of accepted practice in the courts." *Id.* at 233.

Because we will not disrupt the "long-standing custom and practice," *id.* at 231, and because public policy supports the Commission's participation, *id.* at 232–33, we find the Commission was a proper party on appeal.

## II. The Commission's findings of fact are supported by substantial evidence.

When reviewing the Commission's findings of fact, an appellate court will only consider the evidence most favorable to the Commission's findings. *NIPSCO*, 907 N.E.2d at 1016 (citing *McClain*, 693 N.E.2d at 1317–18). In 1913, the General Assembly enacted the Shively-Spencer Act removing "all control over public utilities" from municipalities and conferred that control to the Commission "as the agent of the state." *City of Huntington v. N. Ind. Power Co.*, 5 N.E.2d 889, 892 (Ind. 1937). The Act thus "conferred upon [the Commission] all the powers of control heretofore enjoyed by the municipalities." *Pub. Serv. Comm'n v. City of Indianapolis*, 137 N.E. 705, 708–09 (Ind. 1922). "There are sound public policy reasons why the General Assembly has declared the [Commission] to be the **exclusive** arbiter of enforceability of ordinances affecting utility services." *Duke Energy Ind., LLC v. Town of Avon*, 82 N.E.3d 319, 325 (Ind. Ct. App. 2017) (emphasis added). The General Assembly declared the Commission to be the exclusive arbiter of enforceability because it "has both the fact-finding expertise and the broader non-local focus necessary to balance [the] competing interests" of public utilities and municipalities. *Id.*

The General Assembly granted municipalities the power to enact reasonable local ordinances affecting a utility's use of a municipality's "streets, highways, or other public property." I.C. § 8-1-2-101(a)(1). When an ordinance is adopted, under Section 101 the ordinance is considered "prima facie reasonable" and will remain in force until successfully challenged. *Id.* If the Commission determines the ordinance is "unreasonable," after a hearing and presentation of the evidence, it "shall be void." *Id.*

A party appealing a Commission determination has the burden "of overcoming the prima facie reasonableness of the Commission's presumptive impartial finding and order[.]" *Pub. Serv. Comm'n*, 131 N.E.2d at 312. The challenger overcomes this presumption by showing substantial evidence does not support the Commission's findings. *Id.* If the reviewing court finds that evidence substantial, the Commission's order will stand. *Id.* An "appellate court neither reweighs the evidence nor assesses the credibility of witnesses and considers only the evidence most favorable to the [Commission's] findings." *Id.* (quoting *McClain*, 693 N.E.2d at 1317).

Duke presented the following evidence before the Commission: Duke services Hoosiers throughout sixty-nine counties, many of which are rural. Duke's Vice President of Rate and Regulatory Strategy testified that "[i]f Duke Energy Indiana were forced to pay for the cost of [underground] relocation," the utility "**would** seek recovery of those costs." Appellant's App. Vol. III, p. 220 (emphasis added). A senior engineering technologist also testified that, if the Ordinances were allowed to stand, "other towns and municipalities **will** enact similar ordinances" to avoid paying the cost of utility relocation. *Id.* at 192 (emphasis added). And these underground projects can cost on average **ten times more** than above-ground projects. And while the potential relocation cost is speculative, requiring an exact figure would require Duke to undergo a rate case, which would undermine the Commission's authority and expertise to review a municipal ordinance for its reasonableness under Section 101, "which involves a comprehensive review of the utility's entire business operation." *NIPSCO Indus. Grp. v. N. Ind. Pub. Serv. Co.*, 100 N.E.3d 234, 236 (Ind. 2018). The Commission is charged with ensuring the public-utility charges are "reasonable and just, and every unjust or unreasonable charge for such service is prohibited and declared unlawful." I.C. § 8-1-2-4. Applying its expertise and authority, the Commission considered the evidence presented to it and determined the Ordinances were unreasonable and void because they threatened to impose unreasonable expenses on Duke, which would in turn impact all Duke customers throughout Indiana.

Based on the evidence, the Commission made these findings: Duke services customers in sixty-nine counties throughout Indiana, and it is thus unlikely that those customers outside of Carmel would benefit from Carmel's aesthetic improvements resulting from buried lines; that Carmel's underground requirements are expensive; and that the Ordinances shift costs onto Duke's customers statewide, forcing all Hoosier customers, even distant rural ratepayers, to bear the burden of the projects. We conclude there is substantial evidence to support the Commission's findings that costs would be so shifted.

Because of its expertise, the Commission is in the best position to determine whether costs are reasonable and whether costs would shift to customers statewide. *See Town of Avon*, 82 N.E.3d at 325 (the Commission "has both the fact-finding expertise and the broader non-local focus necessary to balance competing interests and determine when a local entity's imposition of costs on a public utility exceeds the bounds of reasonableness"). "The [Commission's] strong understanding of the public interest **and** its demonstrated expertise in administering the regulatory schemes in which utilities operate are essential to a fair evaluation of local ordinances that impact utilities." *Id.* at 326 (emphasis in original).

The Code requires the Commission to require nondiscriminatory rates and charges. *See* I.C. § 8-1-2-4. This means that the Commission can find a municipality's ordinance unreasonable when the ordinance unfairly shifts costs of a municipal project to all Hoosier customers statewide. Similarly, the Commission may "prescribe uniform rates" for Hoosiers within a region to "avoid unnecessary and unreasonable expense, or to avoid discrimination in rates between classes of customers, or, whenever in the judgment of the [Commission] public interest so requires." *Id.*; *id.* § 8-1-2-0.5 ("The general assembly declares that it is the continuing policy of the state . . . to use all practicable means and measures, including financial . . . to create and maintain conditions under which utilities plan for and invest in infrastructure necessary for operation and maintenance while protecting the affordability of utility services . . . ."). Using its expertise to find that costs would shift to Hoosier customers statewide, the Commission concluded the enforcement of the Ordinances would cause

classes of customers to pay more than the cost of Duke's services or other classes of customers to pay less than the cost of Duke's services.

The Commission concluded the Underground Ordinance, "in conjunction with the Relocation Ordinance," was unreasonable because it "impermissibly shifts these costs to Duke's customers statewide, most of whom will never benefit from these municipal projects[.]" Appellant's App. Vol. II, p. 15. The Commission concluded the Relocation Ordinance "unfairly burdens" Hoosier customers because "it shifts onto public utilities" the relocation of utility facilities costs "without considering the broader public interests of their customers. . . . To force Duke's customers statewide to pay for utility relocations in Carmel is unfair and unreasonable." *Id.* at 17.

Having so concluded, the Commission's only statutory remedial power was to declare the ordinance "void." I.C. § 8-1-2-101(a)(1). The concurrence makes a fair point that the Commission went farther than necessary in "envision[ing] circumstances where enforcing the ordinance might run afoul of Indiana Department of Transportation regulations, or where some terms in the ordinance could prove vague." *Post*, 1 (Opinion of Molter, J.). The separate opinion also raises an intriguing question, in the parlance of constitutional law, asking whether the challenge is "facial" or "as applied." *See id.* at 2–3. This could be important in a future case, though not decisive here. Is the ordinance void "as applied" to Duke in this case because of the unreasonable cost shifting? Or is it void on its face in its entirety because it would be unreasonable under any circumstances the Commission might imagine? We would surmise the former, in that Carmel could likely still enforce those portions of the ordinances requiring the burying of power lines, so long as Carmel pays for it. The problem for us at the moment is that the statute doesn't contemplate any distinction between facial challenges and those as applied. The statute gives the Commission only one power if it finds an ordinance "unreasonable," whether on its face or as applied, and that is to **void** it. I.C. § 8-1-2-101(a)(1). That is what the Commission did here, and the record evidence on cost shifting alone supports it.

# Conclusion

Based on Duke's evidence that it would seek recovery of the underground project's costs, the Commission, using its expertise and statutory authority, reasonably concluded the costs would be shifted to all Duke customers statewide because they would be included in Duke's rates. *See Town of Avon*, 82 N.E.3d at 325. The evidence presented by Duke is substantial enough to support the Commission's findings that costs would be shifted and its ultimately reasonable conclusion that the Ordinances are unreasonable. *See Citizens Action Coal. of Ind., Inc. v. Pub. Serv. Co. of Ind.*, 450 N.E.2d 98, 102 (Ind. Ct. App. 1983). We affirm the Commission's order.

Rush, C.J., concur.

Slaughter, J., concurs with separate opinion.

Goff, J., concurs in result with separate opinion.

Molter, J., concurs in part, dissents in part with separate opinion.

ATTORNEYS FOR APPELLANT CITY OF CARMEL, INDIANA

Jon Oberlander
Benjamin J. Legge
City of Carmel
Carmel, Indiana

ATTORNEYS FOR APPELLEES DUKE ENERGY INDIANA, LLC

Darren Andrew Craig
Maggie L. Smith
Frost Brown Todd LLC
Indianapolis, Indiana


Elizabeth Heneghan
Ariane S. Johnson
Duke Energy Indiana, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEES INDIANA UTILITY REGULATORY COMMISSION

Beth Heline
Jeremy Comeau
Bradford Hines
Indiana Utility Regulatory Commission
Indianapolis, Indiana

Benjamin M. L. Jones
Office of the Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES INDIANA OFFICE OF UTILITY
CONSUMER COUNSELOR

William I. Fine
Indiana Office of Utility Consumer Counselor
Indianapolis, Indiana

ATTORNEYS FOR INDIANA ENERGY ASSOCIATION, INC.

Erin C. Borissov
Leah R. Zoccola
Parr Richey Frandsen Patterson Kruse LLP
Indianapolis, Indiana

ATTORNEYS FOR INDIANA MUNICIPAL LAWYERS ASSOCIATION
AND ACCELERATE INDIANA MUNICIPALITIES

Karen L. Arland
Thomas Kennedy Downs
Kennedy Downs & Arland, PC
Carmel, Indiana

Rebecca McCuaig
Indianapolis, Indiana

**Slaughter, J., concurring.**

I concur in the Court's opinion based on my understanding that it is affirming only part of the utility regulatory commission's order—namely, the part finding Carmel's relocation ordinance unreasonable and thus void under Indiana Code section 8-1-2-101. I do not understand the Court to be affirming the part of the order voiding Carmel's underground ordinance.

**Goff, J., concurring in the judgment.**

I agree with the Court's conclusions that the IURC is a proper party on appeal, that substantial evidence supports the IURC's finding that the Ordinances improperly shift the project costs to customers beyond the City, and that the IURC appropriately applied its expertise by concluding that the Ordinances are unreasonable and thus void. I write separately for two reasons: (1) to clarify when, in my view, the IURC is a proper party on appeal; and (2) to stress the IURC's expertise and statutory authority to review and invalidate a municipal ordinance for its unreasonableness.

## I. The IURC's status as a party on appeal should not depend on its "legislative" or "adjudicative" capacity in the proceedings below.

In *Hamilton Southeastern Utilities, Inc. v. Indiana Utility Regulatory Commission* (*HSE*), the utility petitioned the IURC for an increase in the rates it charged its customers—a process known as a rate case. 101 N.E.3d 229, 230 (Ind. 2018). The IURC approved an increase in rates but at a substantially lower amount than what the utility had requested. *Id.* On appeal, the utility successfully moved to dismiss the IURC as a party. *Id.* This Court disagreed, holding that the IURC **was** a proper party to the appeal. Dismissal of the agency ran "counter to a long-standing practice" of allowing the IURC to "defend its own orders," the Court explained, and would "frustrate the effectiveness of challenges to appeals given that other parties seldom represent the entirety of the [IURC's] interests." *Id.* at 232–33. In a separate section of its opinion, the Court pointed out that the IURC's "main function" in the proceeding there "was not adjudicative" but rather "legislative in nature" and that, because the petition "was not to settle a dispute" between two parties, the IURC proceedings "were not akin to those before a trial court." *Id.* at 233.

The parties here dispute the precedential import of *HSE*. In the IURC's view, the *HSE* Court "adopted a categorical rule" under which the agency "may 'determine whether its interests are being adequately represented'

when choosing whether to participate on appeal." IURC Pet. to Trans. at 13 (quoting 101 N.E.3d at 233). The City rejects this argument, stressing the distinction made in that case between the IURC's legislative, rate-making function and the agency's adjudicative function. Resp. in Opp. to Trans. at 9–12. This distinction, the City adds, harmonizes with earlier precedent prohibiting the IURC from participating on appeals in which it adjudicates a dispute, ultimately creating a "bright line rule allowing the IURC to participate on appeal only where it acts in a legislative capacity." *Id.* at 12–13; *see, e.g.*, *Citizens Action Coal. of Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 70 N.E.3d 429, 432 n.1 (Ind. Ct. App. 2017) (concluding that the IURC "is not a proper party on appeal from its own decision" because it "acted as a fact-finding administrative tribunal" and because "no statute or administrative provision expressly makes the IURC a party on appeal").

The implications of the *HSE* Court's legislative-versus-adjudicative distinctions are not entirely clear from its opinion. On the one hand, the language used there **could** suggest that the IURC is **not** a proper party on appeal if its proceedings **are** akin to those before a trial court. But the Court's opinion stops short of reaching such a conclusion. What's more, there's no discussion in the *HSE* opinion of whether to disapprove or reaffirm precedent that prohibits the IURC from participating on appeal from cases in which it adjudicated a dispute.

Here, the Court of Appeals agreed with the City, concluding that the IURC "is not a proper party on appeal from its own decision" because it "acted as a fact-finding administrative tribunal." *City of Carmel v. Duke Energy, LLC*, 198 N.E.3d 1182, 1186 n.1 (Ind. Ct. App. 2022). The Court, in turn, finds this reasoning persuasive, but only "**if** the Commission is to be strictly analogized to a trial court." *Ante*, at 4. "[U]nlike trial courts," the opinion explains, the IURC's "authority is quasi-legislative, not judicial." *Id.* While I certainly agree with this view, I'm not quite sure where it leaves us. Does it mean we no longer consider the IURC to act in an adjudicative capacity, regardless of the nature of the proceedings below? In other words, does the Court's opinion render the legislative/judicial distinction—embodied in decades of precedent from Indiana courts—obsolete? Given the parties' dispute over the precedential implications of *HSE*, I would clarify the issue to avoid protracted litigation in the future.

In my view, there's no basis for distinguishing the IURC's decisional capacity when deciding whether to allow that agency to proceed as a party on appeal. For starters, the reasoning used in cases like *Citizens Action Coalition*—that "no statute or administrative provision expressly makes the IURC a party on appeal"—was implicitly rejected by the *HSE* Court. *See* 101 N.E.3d at 231–32 (citing legislative silence and long-standing custom as factors for why the IURC may appear on appeal).

Second, whether in resolving a dispute like this one or in deciding a rate case like in *HSE*, the IURC considers—and ultimately rules on—a variety of competing adversarial interests. *See id.* at 233 (acknowledging that there were "opposing parties with competing interests involved [t]here"). In fact, the Court of Appeals has observed in other cases that **all** IURC proceedings, including ratemaking cases, "are conducted through an **adversarial process**" involving not only the utility but also the Office of Utility Consumer Counselor representing the public and any number of intervenors representing diverse interests. *IPL Indus. Grp. v. Indianapolis Power & Light Co.*, 159 N.E.3d 617, 621, 623 (Ind. Ct. App. 2020) (emphasis added).

Finally, I consider flawed the analogy between IURC proceedings and those of a trial court. Rather than acting in a purely adjudicative capacity (like courts), the IURC is "a fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature." *Duke Energy Indiana, LLC v. Town of Avon*, 82 N.E.3d 319, 324 (Ind. Ct. App. 2017) (internal citation omitted). While the agency may have been resolving a dispute between the immediate parties to this litigation, it was—at a macro level—exercising "regulatory oversight of ordinances directly affecting a public utility's costs" and, therefore, its utility rates, as tasked by the General Assembly. *See* IURC Pet. to Trans. at 14–15 (citing I.C. §§ 8-1-2-4, -68). What's more, IURC proceedings are less formal than proceedings before a trial court. *See* 170 Ind. Admin. Code 1-1.1-26(a) (IURC "may be guided generally by relevant provisions of the Indiana Rules of Trial Procedure and the Indiana Rules of Evidence to the extent they are consistent with this rule"). And the applicable statutes vest **discretion** in the IURC to hold a hearing before ruling on complaints like the one here. *See Town of Avon*, 82 N.E.3d at 326 (citing relevant statutes).

The Court may very well agree with these points. But by failing to address the ambiguity created by *HSE* (an ambiguity exploited and argued extensively by the parties here), the Court misses an opportunity to clarify an area of the law that may lead to even further confusion down the road.

## II. The statute plainly directs the IURC to declare "void" any ordinance it deems "unreasonable."

By concluding that the Ordinances impermissibly shifted costs, the IURC declared the Ordinances "unreasonable" and thus "void," precisely as the statute dictates. App. Vol. 2, p. 19 (citing I.C. § 8-1-2-101(a)). According to the separate opinion, dissenting in part, this determination suggests that, "going forward, Carmel can *never* enforce" the Ordinances "in *any* circumstances." *Post*, at 1 (opinion of Molter, J.). Finding no support for this approach, the dissent points to the "primary concerns" raised by the IURC in its order—namely, circumstances where enforcement "might run afoul" of INDOT regulations and the possibility that certain terms "could prove vague." *Id.* Invalidating an ordinance on its face because it "might operate in an unreasonable manner," the dissent concludes, simply goes too far. *Id.* at 2–3. And unless the IURC limits its review to the "validity of applying the ordinance to the facts of a particular case," the dissent warns, a municipality "may never be able to enact valid utility-related ordinances." *Id.* at 2.

The Court concedes that the dissent "makes a fair point" in that the IURC "went farther than necessary" by citing tentative or hypothetical circumstances to invalidate the Ordinances on their face. *Ante*, at 9. And while acknowledging that the statute limits the IURC to declaring an "unreasonable" ordinance "void," the Court opines that a "facial" versus "as applied" distinction "could be important in a future case." *Id.*

In my view, the dissenting opinion is unnecessary and rests on an incorrect reading of the record.

To begin with, the Court cites impermissible cost shifting as the **only** ground for affirming the IURC. *Ante*, at 10. With no discussion of the

alternative grounds for invalidating the Ordinances (conflict with INDOT regulations and vague terms), the Court does **not**, as the dissent suggests, "get ahead" of itself by determining whether the IURC "correctly interpreted how another agency would apply its regulations or whether the ordinances might prove vague in different circumstances." *See post*, at 1–2 (opinion of Molter, J.). Rather, by affirming on the narrow ground of impermissible cost shifting, the Court leaves room for the City (and other municipalities for that matter) to enact similar ordinances (requiring undergrounding and relocation of utility facilities), so long as the City bears the associated costs.

Second, the proposition that the IURC invalidated the Ordinances because they "might operate in an unreasonable manner" overlooks critical portions of the IURC order. Rather than invoking "hypothetical circumstances," the IURC was unequivocal in its conclusion that both Ordinances "impermissibly invade INDOT's regulation of projects" and that both "are extremely vague." App. Vol. 2, p. 14; *see also id.* at 15 (citing examples of the Underground Ordinance's "extremely vague" terms and pointing to its "clear conflict" with INDOT regulations), *id.* at 17 (citing examples of the Relocation Ordinance's "unreasonably vague" terms and stressing twice that it "clearly conflicts" with INDOT regulations). These conclusions, in my view, are no less definitive—and the supporting evidence no less substantial—than the IURC's conclusion that the Ordinances improperly shift "costs to Duke's customers statewide, most of whom will never benefit from these municipal projects."[1] *See id.* at 15. To conclude otherwise undermines the IURC's "authority and expertise to review a municipal ordinance for its reasonableness." *See ante*, at 7.

---

[1] While acknowledging that "the potential relocation cost" for an underground project "is speculative," the Court explains that, to require an "exact figure" would ultimately "undermine the Commission's authority and expertise to review a municipal ordinance for its reasonableness." *Ante*, at 7. *See also post*, at 1 (opinion of Molter, J.) (agreeing with the Court that the IURC "appropriately applied its expertise when reaching the reasonable conclusion that municipalities should not be permitted to shift relocation costs to utilities in these sorts of circumstances").

Finally, it's worth bearing in mind the primary role of the IURC: ensuring uniformity of utility regulation throughout the state by limiting the authority exercised by municipal entities. *See City of Huntington v. N. Ind. Power Co.*, 211 Ind. 502, 510, 5 N.E.2d 889, 892 (1937) (describing the purpose of the 1913 Shively-Spencer Act as shifting "all control over public utilities" from the municipal level to the IURC's predecessor "as the agent of the state"). The General Assembly vested this power in the IURC because it "has both the fact-finding expertise and the broader non-local focus necessary to balance competing interests" of public utilities and local municipalities. *Town of Avon*, 82 N.E.3d at 325 (internal citation omitted). So, to the extent that an ordinance "might operate in an unreasonable manner," I reject the idea that it asks "too much" of our local governments to ensure otherwise. *See post*, at 3 (opinion of Molter, J.).

# Conclusion

For the reasons above, I concur in the Court's judgment recognizing the IURC as a proper party on appeal and affirming the IURC's invalidation of the Ordinances on the narrow ground of impermissible cost shifting. To the extent the Court questions the IURC's authority to declare the Ordinances facially invalid based on the alternative grounds raised by the dissent, I consider that portion of the opinion to be unnecessary dicta.

**Molter, J., concurring in part, dissenting in part.**

For both projects in dispute—the trail project and the road project—Duke is willing to relocate and bury power lines as Carmel's ordinances require, but the parties dispute who should pay for it. Carmel wants Duke to pay. Duke wants Carmel to pay.

The Commission concluded that when, as here, a municipality requires a utility to bury power lines for aesthetic reasons, the municipality can't shift the costs to the utility because the utility will ultimately pass the costs to ratepayers around the State who received no benefit from burying the power lines. The Court's opinion affirms that conclusion, and I agree with that much as it relates to the two projects at issue. As the Court's opinion correctly explains, the Commission is a proper party on appeal; the findings of fact that the opinion discusses were supported by substantial evidence; and the Commission appropriately applied its expertise when reaching the reasonable conclusion that municipalities should not be permitted to shift relocation costs to utilities in these sorts of circumstances.

But the Commission didn't just stop Carmel from shifting the relocation costs to Duke for these two projects. The Commission went on to invalidate Carmel's ordinances on their face by ordering: "Carmel's Underground Ordinance and Relocation Ordinance are unreasonable and void pursuant to Ind. Code § 8-1-2-101." App. Vol. II at 19. That seems to suggest that, going forward, Carmel can *never* enforce any part of either its Relocation Ordinance or its Underground Ordinance in *any* circumstances.

I don't think the record supports going that far. The Commission's primary concerns when invalidating the ordinances on their face were that the Commission could envision circumstances where enforcing the ordinance might run afoul of Indiana Department of Transportation regulations, or where some terms in the ordinance could prove vague. *Id.* at 14 ("Both of Carmel's Ordinances impermissibly invade INDOT's regulation of projects, and both are extremely vague, containing undefined terms and referencing undefined standards."). We don't need to get ahead of ourselves to determine whether the Commission correctly

interpreted how another agency would apply its regulations or whether the ordinances might prove vague in different circumstances. And the Commission didn't need to either because those questions have nothing to do with whether Carmel can shift costs to Duke for these two projects, which is all the Commission needed to decide.

Both Carmel and Duke agree that Indiana Code section 8-1-2-101 allowed the Commission to review the reasonableness of the ordinances as Carmel was applying them to Duke for the two projects in dispute rather than evaluating the facial validity of the ordinances. Oral Argument at 9:43–10:50 (Carmel); *id.* at 32:1237 (Duke). And unless the Commission concludes that enforcing an ordinance will always be unreasonable, or at least always unreasonable in some particular set of circumstances, it should limit its review to the validity of applying the ordinance to the facts of a particular case. Otherwise, municipalities may never be able to enact valid utility-related ordinances, as this case illustrates.

Carmel tried to amend its Relocation Ordinance and its Underground Ordinance to comply with the Commission's recent order invalidating a similar Avon ordinance. *In re Duke Energy Ind., LLC*, No. 44804, 2019 WL 342923, at \*17 (IURC Jan. 23, 2019). The Commission's Avon order also included hypothetical circumstances in which the ordinance might operate in an unreasonable manner. *Id.* at \*12 ("One could easily envision a circumstance in which a utility and INDOT are still negotiating a work plan under 105 IAC 13-3-3, but 60 days have passed following a demand by Avon to relocate utility facilities, resulting in fines and potential legal action by Avon against the utility if the relocation is not complete."). And the Commission's reasons for invalidating Avon's ordinance included:

> It fails to provide any procedures for considering less costly alternatives to those demanded by Avon. It contains no provisions to ensure that any new location to which Avon demands that a utility move is legal and feasible under the federal and state laws and regulations that public utilities must follow in siting and constructing their facilities. It also permits no consideration of factors that may prevent utilities from

complying with Avon's demand to relocate utility facilities, such as weather, design constraints, availability of materials, feasibility, acquisition of legal rights, and the like.

*Id.*

Carmel revised its Relocation Ordinance and its Underground Ordinance trying to address the Commission's concerns, yet the Commission's order here laments that Carmel's attempt to comply with the Avon order "reflect[s] a gross misunderstanding of that order's findings." App. Vol. II at 18. The Commission's approach of reviewing these ordinances and invalidating them on their face if there are potentially circumstances where the ordinances may conflict with another agency's regulations means ordinances will only survive if the drafters correctly guess every tension with other laws and regulations that either the current or future members of the Commission might conceive. That is too much to ask of local governments, and Indiana Code section 8-1-2-101 doesn't require that approach.

While the record supports a decision to prohibit Carmel's request to shift the costs of these two projects to Duke, the record does not support the Commission's decision to invalidate the two ordinances on their face. I would therefore affirm the Commission's order to the extent it precludes Carmel from enforcing its ordinances to shift the costs of these projects to Duke, reverse the order to the extent it invalidates the ordinances on their face, and remand for the Commission to amend its order accordingly.